Justice Breyer
delivered the opinion of the Court.
The Armed Career Criminal Act imposes a special mandatory 15-year prison term upon felons who unlawfully possess a firearm and who also have three or more previous convictions for committing certain drug crimes or “violent felon[ies].” 18 U. S. C. § 924(e)(1) (2000 ed., Supp. V). The question in this case is whether driving under the influence of alcohol is a “violent felony” as the Act defines it. We conclude that it is not.
I
A
Federal law prohibits a previously convicted felon from possessing a firearm. § 922(g)(1) (2000 ed.). A related provision provides for a prison term of up to 10 years for an ordinary offender. § 924(a)(2). The Armed Career Criminal Act imposes a more stringent 15-year mandatory minimum sentence on an offender who has three prior convictions “for a violent felony or a serious drug offense.” § 924(e)(1) (2000 ed., Supp. V).
The Act defines a “violent felony” as “any crime punishable by imprisonment for a term exceeding one year” that
“(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
*140 “(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” § 924(e)(2)(B) (2000 ed.).
We here consider whether driving under the influence of alcohol (DUI), as set forth in New Mexico’s criminal statutes, falls within the scope of the second clause.
B
The relevant background circumstances include the following: In September 2004, New Mexico police officers received a report that Larry Begay, the petitioner here, had threatened his sister and aunt with a rifle. The police arrested him. Begay subsequently conceded he was a felon and pleaded guilty to a federal charge of unlawful possession of a firearm in violation of § 922(g)(1). Begay’s presentence report said that he had been convicted a dozen times for DUI, which under New Mexico’s law becomes a felony (punishable by a prison term of more than one year) the fourth (or subsequent) time an individual commits it. See N. M. Stat. Ann. §§ 66-8-102(G) to (J) (Supp. 2007). The sentencing judge consequently found that Begay had at least three prior convictions for a crime “punishable by imprisonment for a term exceeding one year.” 377 F. Supp. 2d 1141,1143 (NM 2005). The judge also concluded that Begay’s “three felony DUI convictions involve conduct that presents a serious potential risk of physical injury to another.” Id., at 1145, The judge consequently concluded that Begay had three or more prior convictions for a “violent felony” and should receive a sentence that reflected a mandatory minimum prison term of 15 years. Ibid.
Begay, claiming that DUI is not a “violent felony” within the terms of the statute, appealed. The Court of Appeals panel by a vote of 2 to 1 rejected that claim. 470 F. 3d 964 (CA10 2006). Begay sought certiorari, and we agreed to decide the question.
*141 II
A
New Mexico’s DUI statute makes it a crime (and a felony-after three earlier convictions) to “drive a vehicle within [the] state” if the driver “is under the influence of intoxicating liquor” (or has an alcohol concentration of .08 or more in his blood or breath within three hours of having driven the vehicle resulting from “alcohol consumed before or while driving the vehicle”). §§66-8-102(A), (C). In determining whether this crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion. See Taylor v. United States, 495 U. S. 575, 602 (1990) (adopting this “categorical approach”); see also James v. United States, 550 U. S. 192, 208-209 (2007) (attempted burglary is a violent felony even if, on some occasions, it can be committed in a way that poses no serious risk of physical harm).
We also take as a given that DUI does not fall within the scope of the Act’s clause (i) “violent felony” definition. DUI, as New Mexico defines it, nowhere “has as an element the use, attempted use, or threatened use of physical force against the person of another.” 18 U. S. C. § 924(e)(2)(B)(i).
Finally, we assume that the lower courts were right in concluding that DUI involves conduct that “presents a serious potential risk of physical injury to another.” § 924(e)(2)(B)(ii). Drunk driving is an extremely dangerous crime. In the United States in 2006, alcohol-related motor vehicle crashes claimed the lives of more than 17,000 individuals and harmed untold amounts of property. National Highway Traffic Safety Admin., Traffic Safety Facts, 2006 Traffic Safety Annual Assessment — Alcohol-Related Fatalities 1 (No. 810821, Aug. 2007), http://www-nrd.nhtsa.dot.gov/ Pubs/810821.PDF (as visited Apr. 11, 2008, and available in *142 Clerk of Court’s case file). Even so, we find that DUI falls outside the scope of clause (ii). It is simply too unlike the provision’s listed examples for us to believe that Congress intended the provision to cover it.
B
1
In our view, the provision’s listed examples — burglary, arson, extortion, or crimes involving the use of explosives— illustrate the kinds of crimes that fall within the statute’s scope. Their presence indicates that the statute covers only similar crimes, rather than every crime that “presents a serious potential risk of physical injury to another.” § 924(e)(2)(B)(ii). If Congress meant the latter, i. e., if it meant the statute to be all encompassing, it is hard to see why it would have needed to include the examples at all. Without them, clause (ii) would cover all crimes that present a “serious potential risk of physical injury.” Ibid. Additionally, if Congress meant clause (ii) to include all risky crimes, why would it have included clause (i)? A crime which has as an element the “use, attempted use, or threatened use of physical force” against the person (as clause (i) specifies) is likely to create “a serious potential risk of physical injury” and would seem to fall within the scope of clause (ii).
Of course, Congress might have included the examples solely for quantitative purposes. Congress might have intended them to demonstrate no more than the degree of risk sufficient to bring a crime within the statute’s scope. But were that the case, Congress would have likely chosen examples that better illustrated the “degree of risk” it had in mind. Our recent case, James v. United States — where we considered only matters of degree, i. e., whether the amount of risk posed by attempted burglary was comparable to the amount of risk posed by the example crime of burglary— illustrates the difficulty of interpreting the examples in this *143 respect. Compare 550 U. S., at 203-207, with id., at 215, 218-219, 229 (Scalia, J., dissenting). Indeed, the examples are so far from clear in respect to the degree of risk each poses that it is difficult to accept clarification in respect to degree of risk as Congress’ only reason for including them. See id., at 229 (“Congress provided examples [that]... have little in common, most especially with respect to the level of risk of physical injury that they pose”).
These considerations taken together convince us that, “ To give effect... to every clause and word’ ” of this statute, we should read the examples as limiting the crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves. Duncan v. Walker, 533 U. S. 167,174 (2001) (quoting United States v. Menasche, 348 U. S. 528,538-539 (1955); some internal quotation marks omitted); see also Leocal v. Ashcroft, 543 U. S. 1,12 (2004) (describing the need to interpret a statute in a way that gives meaning to each word).
The concurrence complains that our interpretive approach is insufficiently specific. See post, at 150-151 (Scalia, J., concurring in judgment). But the concurrence’s own approach demands a crime-by-crime analysis, uses a standard of measurement (comparative degree of risk) that even the concurrence admits is often “unclear,” post, at 151, requires the concurrence to turn here to the still less clear “rule of lenity,” post, at 153, and, as we explain, is less likely to reflect Congress’ intent. See, e. g., post, at 153-154 (recognizing inability to measure quantitative seriousness of risks associated with DUI).
The statute’s history offers further support for our conclusion that the examples in clause (ii) limit the scope of the clause to crimes that are similar to the examples themselves. Prior to the enactment of the current language, the Act applied its enhanced sentence to offenders with “three previous convictions for robbery or burglary.” Taylor, supra, at 581 (internal quotation marks omitted). Congress sought t *144 expand that definition to include both crimes against the person (clause (i)) and certain physically risky crimes against property (clause (ii)). See H. R. Rep. No. 99-849, p. 3 (1986) (hereinafter H. R. Rep.). When doing so, Congress rejected a broad proposal that would have covered every offense that involved a substantial risk of the use of “‘physical force against the person or property of another.’” Taylor, 495 U. S., at 583 (quoting S. 2312, 99th Cong., 2d Sess. (1986); H. R. 4639, 99th Cong., 2d Sess. (1986)). Instead, it added the present examples. And in the relevant House Report, it described clause (ii) as including “State and Federal felonies against property such as burglary, arson, extortion, use of explosives and similar crimes as predicate offenses where the conduct involved presents a serious risk of injury to a person.” H. R. Rep., at 5 (emphasis added).
Of course, the statute places the word “otherwise,” just after the examples, so that the provision covers a felony that is one of the example crimes “or otherwise involves conduct that presents a serious potential risk of physical injury.” § 924(e)(2)(B)(ii) (emphasis added). But we cannot agree with the Government that the word “otherwise” is sufficient to demonstrate that the examples do not limit the scope of the clause. That is because the word “otherwise” can (we do not say must, cf. post, at 151 (Scalia, J., concurring in judgment)) refer to a crime that is similar to the listed examples in some respects but different in others — similar, say, in respect to the degree of risk it produces, but different in respect to the “way or manner” in which it produces that risk. Webster’s Third New International Dictionary 1598 (1961) (defining “otherwise” to mean “in a different way or manner”).
2
In our view, DUI differs from the example crimes — burglary, arson, extortion, and crimes involving the use of explosives — in at least one pertinent, and important, respect. The listed crimes all typically involve purposeful, “violent,” *145 and “aggressive” conduct. 470 F. 3d, at 980 (McConnell, J., dissenting in part); see, e. g., Taylor, supra, at 598 (“burglary” is an unlawful or unprivileged entry into a building or other structure with “intent to commit a crime”); ALI Model Penal Code §220.1(1) (1985) (“arson” is causing a fire or explosion with “the purpose of,” e. g., “destroying a building... of another” or “damaging any property ... to collect insurance”); id., §223.4 (extortion is “purposely” obtaining property of another through threat of, e. g., inflicting “bodily injury”); Leocal, supra, at 9 (the word “ ‘use’... most naturally suggests a higher degree of intent than negligent or merely accidental conduct” which fact helps bring it outside the scope of the statutory term “crime of violence”). That conduct is such that it makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim. Crimes committed in such a purposeful, violent, and aggressive manner are “potentially more dangerous when firearms are involved.” 470 F. 3d, at 980 (McConnell, J., dissenting in part). And such crimes are “characteristic of the armed career criminal, the eponym of the statute.” Ibid.
By way of contrast, statutes that forbid driving under the influence, such as the statute before us, typically do not insist on purposeful, violent, and aggressive conduct; rather, they are, or are most nearly comparable to, crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all. The Government argues that “the knowing nature of the conduct that produces intoxication combined with the inherent recklessness of the ensuing conduct more than suffices” to create an element of intent. Brief for United States 35. And we agree with the Government that a drunk driver may very well drink on purpose. But this Court has said that, unlike the example crimes, the conduct for which the drunk driver is convicted (driving under the influence) need not be purposeful or deliberate. See Leocal, supra, at 11 (a DUI offense involves “accidental or negligent conduct”); see also *146 470 F. 3d, at 980 (McConnell, J., dissenting in part) (“[D]runk driving is a crime of negligence or recklessness, rather than violence or aggression”).
When viewed in terms of the Act’s basic purposes, this distinction matters considerably. As suggested by its title, the Armed Career Criminal Act focuses upon the special danger created when a particular type of offender — a violent criminal or drug trafficker — possesses a gun. See Taylor, supra, at 587-588; 470 F. 3d, at 981, n. 3 (McConnell, J., dissenting in part) (“[T]he title [of the Act] was not merely decorative”). In order to determine which offenders fall into this category, the Act looks to past crimes. This is because an offender’s criminal history is relevant to the question whether he is a career criminal, or, more precisely, to the kind or degree of danger the offender would pose were he to possess a gun.
In this respect — namely, a prior crime’s relevance to the possibility of future danger with a gun — crimes involving intentional or purposeful conduct (as in burglary and arson) are different from DUI, a strict-liability crime. In both instances, the offender’s prior crimes reveal a degree of callousness toward risk, but in the former instance they also show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger. We have no reason to believe that Congress intended a 15-year mandatory prison term where that increased likelihood does not exist.
Were we to read the statute without this distinction, its 15-year mandatory minimum sentence would apply to a host of crimes which, though dangerous, are not typically committed by those whom one normally labels “armed career criminals.” See, e.g., Ark. Code Ann. § 8-4-103(a)(2)(A)(ii) (2007) (reckless polluters); 33 U. S. C. § 1319(c)(1) (individuals who negligently introduce pollutants into the sewer system); 18 U. S. C. § 1365(a) (individuals who recklessly tamper with consumer products); §1115 (seamen whose inattention to *147 duty causes serious accidents). We have no reason to believe that Congress intended to bring within the statute’s scope these kinds of crimes, far removed as they are from the deliberate kind of behavior associated with violent criminal use of firearms. The statute’s use of examples (and the other considerations we have mentioned) indicate the contrary.
The dissent’s approach, on the other hand, would likely include these crimes within the statutory definition of “violent felony,” along with any other crime that can be said to present a “‘potential risk of physical injury.’” Post, at 156 (opinion of Alito, J.). And it would do so because it believes such a result is compelled by the statute’s text. See post, at 155. But the dissent’s explanation does not account for a key feature of that text — namely, the four example crimes intended to illustrate what kind of “violent felony” the statute covers. The dissent at most believes that these examples are relevant only to define the requisite serious risk associated with a “crime of violence.” Post, at 158-159. But the dissent does not explain how to identify the requisite level of risk, nor does it describe how these various examples might help determine what other offenses involve conduct presenting the same level of risk. If they were in fact helpful on that score, we might expect more predictable results from a purely risk-based approach. Compare post, at 148, 153-154 (Scalia, J., concurring in judgment), with post, at 156-158 (dissenting opinion). Thus, the dissent’s reliance on these examples for a function they appear incapable of performing reads them out of the statute and, in so doing, fails to effectuate Congress’ purpose to punish only a particular subset of offender, namely, career criminals.
The distinction we make does not minimize the seriousness of the risks attached to driving under the influence. Nor does our argument deny that an individual with a criminal history of DUI might later pull the trigger of a gun. (Indeed, we may have such an instance before us. 470 F. 3d, *148 at 965.) Rather, we hold only that, for purposes of the particular statutory provision before us, a prior record of DUI, a strict-liability crime, differs from a prior record of violent and aggressive crimes committed intentionally such as arson, burglary, extortion, or crimes involving the use of explosives. The latter are associated with a likelihood of future violent, aggressive, and purposeful “armed career criminal” behavior in a way that the former are not.
We consequently conclude that New Mexico’s crime of “driving under the influence” falls outside the scope of the Armed Career Criminal Act’s clause (ii) “violent felony” definition. And we reverse the judgment of the Court of Appeals in relevant part and remand the case for proceedings consistent with this opinion.

It is so ordered.