[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Nov. 3, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15909

_____

D. C. Docket No. 08-00121-CR-T-26-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY HARRIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 3, 2009)

Before MARCUS and HILL, Circuit Judges, and VOORHEES,[*] District Judge.

MARCUS, Circuit Judge:

_____

[*] Honorable Richard L. Voorhees, United States District Judge for the Western District of North Carolina, sitting by designation.

Anthony Harris appeals the district court's application of the U.S.S.G. § 2K2.1(a)(4)(A) career offender enhancement to his sentence for being a felon in possession of a firearm. He argues that his prior felony conviction under Fla. Stat. § 316.1935(3)(a) for willfully fleeing or eluding a police officer at high speed or with wanton disregard for the safety of persons or property should not qualify as a "crime of violence," as defined by U.S.S.G. § 4B1.2. Harris claims more specifically that under the framework announced by the Supreme Court in Begay v. United States, 128 S. Ct. 1581 (2008), eluding the police does not constitute "purposeful, violent and aggressive conduct," id. at 1586-87, and, therefore, cannot form a predicate offense for the career offender sentence enhancement. However, application of the framework explained by the Supreme Court in Begay, as well as its holdings in James v. United States, 550 U.S. 192 (2007), and Chambers v. United States, 129 S. Ct. 687 (2009), yields the conclusion that a conviction under Section 316.1935(3)(a) of Florida's penal code qualifies as a "crime of violence" for Section 2K2.1(a)(4)(A) purposes, and, accordingly, we affirm.

I.

On November 23, 2006, Anthony Harris fled from the police while driving his car at a speed of 70 to 80 miles per hour, ultimately crashing his car into a tree and causing serious injury to his passenger. Harris was charged in Pinellas

2

County, Florida, with fleeing from a law enforcement officer under Fla. Stat. § 316.1935(3)(a), which provides that

> (3) [a]ny person who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with siren and lights activated, and during the course of the fleeing or attempted eluding:
>
> (a) Drives at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property, commits a felony of the second degree . . . .

Fla. Stat. § 316.1935. Harris pled nolo contendere to the Section 316.1935(3)(a) charge on May 27, 2007, and was convicted. On March 20, 2008, Anthony Harris was charged with and pled guilty, in the United States District Court for the Middle District of Florida, to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The Presentence Investigation Report ("PSI") recommended a base offense level of 20, counting Harris's earlier conviction under Fla. Stat. § 316.1935(3)(a) as a "crime of violence" under U.S.S.G. § 2K2.1(a)(4)(A).

At the sentencing hearing, Harris objected to the PSI's categorization of his 2006 Florida conviction for fleeing and eluding as being a crime of violence under the Sentencing Guidelines. Harris argued that under Begay and United States v. Archer, 531 F.3d 1347 (11th Cir. 2008), fleeing and eluding should no longer be classified as a "crime of violence" under the Sentencing Guidelines. The district

3

court disagreed, observing that the Eleventh Circuit had, in a case squarely on point, previously held that a Fla. Stat. § 316.1935(3) conviction was a crime of violence under the United States Sentencing Guidelines in United States v. Orisnord, 483 F.3d 1169, 1183 (11th Cir. 2007). While Supreme Court law governing the analysis of crimes of violence had changed in the interim, the district court found that it was bound by Orisnord unless and until the Eleventh Circuit held otherwise. (Hr'g Trans. Sentencing at 11, Oct. 3, 2008). We take this opportunity to reiterate that Fla. Stat. § 316.1935(3)(a) still qualifies as a "crime of violence" under the Sentencing Guidelines.

## II.

We review de novo whether a defendant's prior conviction qualifies as a "crime of violence" under the Sentencing Guidelines. United States v. Llanos-Agostadero, 486 F.3d 1194, 1196 (11th Cir. 2007); United States v. Ivory, 475 F.3d 1232, 1233-34 (11th Cir. 2007).

Under U.S.S.G. § 2K2.1(a)(4)(A), felons receive a base level of 20 if they committed the firearm offense "subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." The Sentencing Guidelines, in turn, define a "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use,

4

attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). The crime at issue here, a violation of Fla. Stat. § 316.1935(3)(a), falls under the residual provision of the career offender guideline for a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another."

In Orisnord, we squarely held that a violation of Fla. Stat. § 316.1935(3)(a) qualifies as a crime of violence for the U.S.S.G. § 4B1.2 career offender enhancement. 483 F.3d at 1183. In that case, a defendant with a prior felony conviction for fleeing and eluding law enforcement officers under Fla. Stat. § 316.1935(3)(a) argued that the district court had improperly characterized this conviction as a crime of violence for sentencing purposes. We concluded, however, that "[t]he dangerous circumstances surrounding a person's attempt to flee from law enforcement coupled with the person's operation of a motor vehicle," along with the fact that the defendant was "deliberately disobeying a law enforcement officer," made it all the more likely that there would be "an inevitable, escalated confrontation with the officer when [the defendant] is finally apprehended." Orisnord, 483 F.3d at 1182-83. Accordingly, we found that a

5

"potential risk of physical injury to another," as is required by U.S.S.G. § 4B1.2, was clearly present. Id. at 1182.

Shortly following Orisnord, the Supreme Court elaborated on the definition of a "violent felony" for the purposes of predicate offenses under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(i)-(ii), in a trilogy of cases: James, Begay, and Chambers. Although James, Begay, and Chambers each addressed sentencing "violent felonies" under the ACCA, the analysis that the Supreme Court employed in those cases is instructive here. Indeed, determining whether a crime constitutes a "violent felony" under the ACCA involves an inquiry strikingly similar to that in determining whether a conviction is a "crime of violence" under U.S.S.G. § 4B1.1(a), inasmuch as "the definitions for both terms are virtually identical." United States v. Taylor, 489 F.3d 1112, 1113 (11th Cir. 2007); compare 18 U.S.C. § 924(e)(2)(B)(ii) (violent felony means any crime punishable by a year of imprisonment, that involves "burglary, arson, or extortion . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another") with U.S.S.G. § 4B1.2(a)(2) (a crime of violence includes a crime punishable by a year of imprisonment that includes "burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another"). The examples of

6

the crimes listed in the two sections are the same; and the residual clause in each --

"otherwise involves conduct that presents a potential risk of physical injury to

another" -- is identical.

Not surprisingly, we have utilized the Supreme Court's framework outlined

in Begay to assess crimes of violence under the Sentencing Guidelines. See Archer,

531 F.3d at 1350 n.1 ("The Supreme Court's Begay decision regarding the ACCA

is instructive here because of the similar definitions of a 'crime of violence' in the

Guidelines and of a 'violent felony' in ACCA."); see also id. at 1352 ("This court

has repeatedly read the definition of a 'violent felony' under § 924(e) of the Armed

Career Criminal Act as 'virtually identical' to the definition of a 'crime of

violence' under U.S.S.G. § 4B1.2.").

A review of the Supreme Court's opinions in James, Begay, and Chambers

does not yield a result different from the one we reached in Orisnord -- that fleeing

at high speed or with wanton disregard for the safety of persons or property is a

crime of violence. First, in James, the Supreme Court reiterated that federal courts

should employ a "categorical approach" to determine whether a predicate offense

qualifies as a violent felony under the residual provision of the ACCA. Under this

approach, courts look "'only to the fact of conviction and the statutory definition of

the prior offense,' and do not generally consider the particular facts disclosed by

7

the record of conviction." James, 550 U.S. at 202 (quoting Taylor v. United States, 495 U.S. 575, 602 (1990) (internal citations omitted)).[1]  The test for whether a particular statutory provision qualifies as a "violent felony" was explained this way: "whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another."  Id. at 208. The Supreme Court, in James, evaluated the quantum of risk posed by an attempted burglary, and determined that the crime qualified as a violent felony under 18 U.S.C. § 924(e)(2)(B)(ii) because it presented the palpable danger that a would-be burglar may encounter an innocent person when the crime is in progress. Id. at 203-04.

The Supreme Court enhanced the test for determining whether an offense is a "violent felony" further in Begay, instructing that, in order to be considered a "violent felony" under the residual provision of the ACCA, the crime must be similar in kind, as well as in degree, to those crimes specifically enumerated in 18 U.S.C. § 924(e)(2)(B)(ii): burglary, arson, and extortion.  128 S. Ct. at 1584-85.  In Begay, the Supreme Court explained the importance of examining the nature and

---

[1] If, however, "ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself," a court may then examine the underlying facts of the conviction to determine the application of Section 4B1.2(a)(2). United States v. Beckles, 565 F.3d 832, 842-43 (11th Cir. 2009) (quoting United States v. Spell, 44 F.3d 936, 939-40 (11th Cir. 1995)).

8

intent surrounding a predicate offense for ACCA purposes. Contrasting New Mexico's driving under the influence statute with the enumerated crimes listed in the ACCA, the Court found "a degree of callousness toward risk" implicit in "crimes involving intentional or purposeful conduct," as opposed to the strict liability that inhered in drunken driving. Id. at 1587. While burglary, arson and extortion require "purposeful, violent, and aggressive conduct," the Supreme Court concluded that drunken driving did not involve any of these characteristics. The Court explained that the purpose of the Armed Career Criminal Act is to incapacitate those offenders who show that they are "the kind[s] of person[s] who might deliberately point the gun and pull the trigger." Id. at 1587 (emphasis added). Thus, it concluded that a "serious potential risk of physical injury" was necessary, but not sufficient, to constitute a violent felony.

In Chambers, the Supreme Court added still another distinction to the calculus between inactive, passive crimes on the one hand and aggressive crimes on the other. In holding that the failure to report to a penal institution did not constitute a violent felony under the ACCA, the Supreme Court compared the nature and intent of the predicate conviction to those enumerated in the residual provision of the Act. 129 S. Ct. at 690-91. The Court found that "conceptually speaking, the crime [of failure to report] amounts to a form of inaction, a far cry

9

from the 'purposeful, violent and aggressive' conduct potentially at issue" in the enumerated crimes. Id. at 692 (quoting Begay, 128 S. Ct. at 1586). Chambers also suggested that statistical data might establish that a crime posed enough risk of serious physical harm to qualify as a violent felony under the ACCA. Indeed, in light of statistical data presented by the United States Sentencing Commission that "strongly support[ed] the intuitive belief that failure to report does not involve a serious potential risk of physical injury," the Supreme Court concluded that a conviction for failing to report to a penal facility was not a violent felony. Id.

In United States v. Harrison, a panel of this Court applied James, Begay, and Chambers to the question of whether a conviction arising under a different section of Fla. Stat. § 316.1935 qualified as an ACCA predicate offense. 558 F.3d 1280 (11th Cir. 2009). In Harrison, we held that the James and Begay cases established a three-step inquiry for determining whether a crime falls under the ACCA's residual clause:

> First, what is the relevant category of crime, determined by looking to how the crime is ordinarily committed? Second, does that crime pose a 'serious potential risk of physical injury' that is similar in degree to the risks posed by the enumerated crimes? Third, is that crime similar in kind to the enumerated crimes?

Id. at 1287. Harrison read Chambers, as well as James and Begay, as suggesting "that statistical evidence plays a role in assessing the risk of non-enumerated

10

crimes under the residual clause." Id. at 1290. Measuring through this lens, we held that a third-degree felony for willfully fleeing the police, Fla. Stat. § 316.1935(2), did not constitute a crime of violence for ACCA purposes because the third-degree escape -- which did not require either high speed or a wanton disregard for safety, as Harris's conviction did -- did not entail the same "high level of risk" as the enumerated crimes found in the Armed Career Criminal Act. Id. at 1294. Thus, we concluded that, as ordinarily committed, the crime of third-degree escape under Florida's penal code did not imply that the offender would "become violent or resist arrest." Id.

Harrison also offered in dicta, however, that the second-degree felony at issue here, Section 316.1935(3), would constitute a violent felony under ACCA:

> we have little difficulty gauging potential risk when high speed or reckless driving is coupled with a willful failure to stop in response to a police signal to do so. The dangerous conduct ordinarily underlying a violation of § 316.1935(3), for example, presents a serious potential risk of injury.

Id. We specifically distinguished the seriousness of the offense when high speed or wanton disregard for safety was at issue:

> our conclusion would be different were the statute to criminalize conduct that, in the ordinary case, involves an offender stepping on the gas and driving away recklessly without regard for the safety of others. Such callousness and indifference to the lives of others smack more of the kind of person that might 'deliberately point the gun and pull the trigger.'

11

Id. at 1295 (quoting Begay, 128 S. Ct. at 1587).

This dicta about the nature of willful fleeing in the second degree under Florida's law is persuasive: the nature of callousness to risk evinced in a Section 316.1935(3) conviction that requires as an element of the crime fleeing at high speed or a wanton disregard for safety, more closely resembles the characteristics of a burglar committing a crime, aware that violence might ensue, or of an arsonist using a fire as a weapon, even without the intent of burning someone, than does merely fleeing from the police. An application of the Supreme Court's recently developed framework yields the same result we reached in Orisnord. We hold, therefore, that Fla. Stat. § 316.1935(3) is a crime of violence for Sentencing Guideline purposes and under U.S.S.G. §§ 4B1.2 and 2K2.1(a)(4)(A).

As the Court instructed us in James, we begin with a categorical approach to this crime. We read the face of Fla. Stat. § 316.1935(3) itself to discern the crime as it is ordinarily committed. Necessarily, we consider whether the crime poses a "serious potential risk of physical injury" that is similar in degree to the risks posed by the enumerated crimes. As in Begay, we examine next whether that crime was similar in kind and in degree to the enumerated crimes. Finally, under Begay and Chambers, we ask whether the conduct at issue in the statute is "purposeful, violent and aggressive," or, whether it is a more passive crime of inaction, such as the

12

failure to report to a penal institution or driving under the influence of alcohol.

Under a categorical approach, the following conduct is comprehended by the language contained in Fla. Stat. § 316.1935(3): 1) a marked law enforcement vehicle signals a motorist to stop, with the sirens and lights activated; 2) the motorist willfully flees; and, 3) the flight occurs either at high speed or with "a wanton disregard for the safety of persons or property." From the face of the statute, it is clear that this predicate crime is similar in kind and degree to those enumerated in the Armed Career Criminal Act. Fleeing from the police at high speed or with "a wanton disregard for the safety of persons or property" does indeed "show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger." Begay, 128 S. Ct. at 1587.

Moreover, the act of fleeing the police under Fla. Stat. § 316.1935(3) is undeniably purposeful; willfulness is an expressed element of the statute. The statutory section suggests that the driver has seen the siren and lights of the police car, recognized that the officer wanted him to stop, and deliberately disobeyed the order in a dangerous fashion. Compare with Archer, 531 F.3d at 1351 (holding that carrying a concealed weapon is not a violent felony because specific intent is not an element of the statute).

The predicate offense also is a violent one. Willfully fleeing in the second

13

degree evinces, by the very language of the statute, a palpable risk of serious injury to persons or property, if not death. In the "ordinary case," James, 550 U.S. at 208, roadways are populated by other travelers whom the offender and the officer will have to avoid hitting in the course of a high speed chase. The offender who eludes a police officer at speeds sufficient to trigger this statutory prohibition necessarily poses a powerful risk to the arresting officer, pedestrians, and other drivers and passengers in their own cars. Like burglary, this flight displays "a degree of callousness toward risk." Begay, 128 S. Ct. at 1587.

Fleeing under Fla. Stat. § 316.1935(3) is also aggressive. Under Florida law, a driver fleeing at such high speeds is indeed like holding a weapon out, ready to fire. Florida's courts have construed motor vehicles to be deadly weapons for the purposes of aggravated assault. McCullers v. State, 206 So. 2d 30, 33-34 (Fla. Dist. Ct. App. 1968) (disapproved of on other grounds); City of Coral Springs v. Forfeiture of a 1997 Ford Ranger Pickup Truck VIN No. 1FTCR10A4VTA62475 FL Tag 3U16BDE, 803 So. 2d 847, 851 (Fla. Dist. Ct. App. 2002); see also Pace v. Capobianco, 283 F.3d 1275, 1282 (11th Cir. 2002) (noting that a car can be a deadly weapon). The driver thus wields a weapon in a place that is, in the "ordinary case," populated with innocent drivers and pedestrians. Like an arsonist lighting a fire without regard for harm the fire may cause, this act plainly is an

14

aggressive one.[2]

Thus the result we reached in Orisnord is the same one we reach today by measuring the predicate offense under the framework laid out in Begay, James, and Chambers. See United States v. Williams, 563 F.3d 1239, 1243 (11th Cir. 2009) ("Although Begay provides guidance for defining a violent felony under the ACCA or an analogous sentencing statute, we do not interpret its holding to require a different outcome in this case or a reexamination of our [prior] holding."). In short, a conviction arising under Fla. Stat. § 316.1935(3)(a) is a crime of violence as defined by U.S.S.G. § 4B1.2. Fleeing at high speed or with wanton disregard for safety amounts to holding a finger on the trigger of a deadly

---

[2] We also observe that several other circuits have examined analogous state laws criminalizing willfully eluding a police officer after Begay. Each of them -- including the Fourth, Fifth, Sixth, Seventh and Tenth Circuits -- has held that willful fleeing from a police officer is inherently aggressive as it provokes chase, and undoubtedly creates the serious potential for risk of physical harm and is therefore a predicate offense under the ACCA. See United States v. LaCasse, 567 F.3d 763 (6th Cir. 2009) (holding that the Michigan statute covering fleeing and eluding a police officers qualifies as an intentional, aggressive, violent crime under the ACCA, akin to escape, and distinguishable from more passive crimes like the DUI discussed in Begay); United States v. Harrimon, 568 F.3d 531 (5th Cir. 2009) (holding that under Texas law, it is a violent felony under the ACCA if the defendant "intentionally flees" from a peace officer, as it is sufficiently "purposeful, violent and aggressive"); United States v. Roseboro, 551 F.3d 226 (4th Cir. 2009) (stating that under South Carolina law, intentionally disobeying law enforcement officer by willfully refusing to stop is inherently aggressive and violent under the ACCA; remanding for determination of whether defendant committed crime intentionally); United States v. West, 550 F.3d 952 (10th Cir. 2008) (holding that the Utah statute for willfully fleeing from police is a violent felony under the ACCA); United States v. Spells, 537 F.3d 743 (7th Cir. 2008) (holding that the Indiana statute for wilfully fleeing and eluding constitutes a violent felony under the ACCA, and noting that "[t]aking flight calls the officer to give chase, and aside from any accompanying risk to pedestrians and other motorists, such flight dares the officer to needlessly endanger himself in pursuit"). The reasoning is the same in each case: willfully fleeing endangers officers, pedestrians and motorists.

15

weapon, without care for whom the bullet may strike.

Accordingly, we AFFIRM.

**AFFIRMED.**