[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10521

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 24, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-60242-CR-WJZ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KATENA LATRESESE WHITSON,
a.k.a. Katena Latreese Whitson,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 24, 2010)

Before EDMONDSON and PRYOR, Circuit Judges, and CAMP,[*] District Judge.

PER CURIAM:

_____

[*]Honorable Jack T. Camp, United States District Judge for the Northern District of
Georgia, sitting by designation.

Appellant Katena Whitson ("Whitson") appeals the district court's application of the Sentencing Guidelines section 4B1.1 "Career Offender" enhancement to her sentence for importation of cocaine. We conclude that her prior conviction for non-overt act criminal conspiracy is no "crime of violence" in the light of Begay v. United States, 128 S. Ct. 1581 (2008). Therefore, she does not qualify as a "career offender." We vacate and remand for resentencing.

## I. BACKGROUND

Whitson plead guilty to importation of more than 500 grams of cocaine in 2008. In her factual proffer, Whitson admitted that she and a co-defendant hid cocaine in sandals they attempted to smuggle into the United States from Jamaica. For the Pre-Sentence Investigation Report (PSI), the probation officer determined that Whitson qualified as a "career offender" under section 4B1.1 of the Sentencing Guidelines. See U.S.S.G. § 4B1.1–2 (2008) (mandating a sentence enhancement for criminals with two prior convictions for "crimes of violence" or "controlled substances" crimes).

Whitson objected to the PSI, arguing that she was no career offender. She

2

contended that her 1995 guilty plea to criminal conspiracy in South Carolina was not a conviction for a "crime of violence." Whitson specifically argued that classifying non-overt act conspiracy as a crime of violence is inconsistent with the Supreme Court's teaching in Begay v. United States. See Begay, 128 S. Ct. at 1584–88 (describing the method by which courts should determine if an offense is a "violent felony" under the Armed Career Criminal Act ("ACCA")). The prosecution argued that conspiracy to commit a violent crime -- in Whitson's case, "strong arm robbery"[1] -- is violent, and that the PSI properly reflected Whitson's status as a career offender. The district judge agreed with the government and overruled Whitson's objection. Whitson's sentence incorporated the career offender enhancement.

## II. DISCUSSION

We review de novo a district court's decision to classify a defendant as a "career offender" under section 4B1.1. United States v. Gibson, 434 F.3d 1234, 1243 (11th Cir. 2006).

---

[1]Whitson's 1995 plea was for "criminal conspiracy." South Carolina does not include the target offense in its statutory definition of conspiracy, but agreement and purpose to commit the specific target act must be proved beyond a reasonable doubt. See S.C. Code Ann. § 16-17-410 (defining conspiracy).

The Supreme Court has discussed the appropriate construction of the phrase "crime of violence." See United States v. Harrison, 558 F.3d 1280, 1285–89 (11th Cir. 2009) (chronicling the Supreme Court's "violent felony" analysis since 2007); United States v. Archer, 531 F.3d 1347, 1349–51 (11th Cir. 2008) (describing the Supreme Court's interpretation of "crimes of violence"). In Harrison, we explained the method for determining whether a defendant's prior conviction qualifies as "violent" under the Armed Career Criminal Act. This case, like Archer, arises under the similar -- but not identical -- career offender enhancement of section 4B1.1–2.[2] We accept Archer; our Court has extended Begay's way of construing the ACCA "violent felony" provision to U.S.S.G. section 4B1.1–2 "crimes of violence." With that in mind, we apply the procedures set forth by the Supreme Court.

A.     The "Categorical Approach"

_____

[2] The Armed Career Criminal Act provides for a statutory minimum sentence of fifteen years for repeat violent or drug offenders. 18 U.S.C. § 924(e)(2)(B)(ii). The ACCA defines "violent felonies" as offenses which may be punished by more than a year's imprisonment and which"[are] burglary, arson, or extortion, involve[] use of explosives" (the so called "enumerated crimes") and that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another" (the so called "residual clause"). Id. The career offender enhancement of section 4B1.1–2 has nearly the same enumerated crimes—it lists "burglary of a dwelling" instead of "burglary"—and also includes an identically worded "residual clause."

When deciding if a crime is "violent" for purposes of the career offender enhancement, we take a "categorical approach." James v. United States, 127 S. Ct. 1586, 1593–94 (2007). This approach "look[s] only to the fact of conviction and the statutory definition of the prior offense . . . . [without examining] particular facts disclosed by the record of conviction." Id. (citations and internal quotation marks omitted); see also Chambers v. United States, 129 S. Ct. 687, 690 (2009) (noting that courts should examine a crime as the statute defines it, and not consider extreme situations). Our inquiry is different for crimes listed in the ACCA or section 4B1.2 than it is for "residual" crimes. See Harrison, 558 F.3d at 1285, 1291 & n.20 (describing the categorical approach for enumerated crimes and residual crimes, and observing the similarity between the ACCA and Sentencing Guidelines residual clauses).

In residual cases like Harrison -- and Whitson's case, here -- we look to the language of the statute itself to discern an offense's elements and to determine how it is "generically" committed. Id. at 1291-92; see also Chambers, 129 S. Ct. at 691 (performing such an analysis and concluding that failure to report to a penal institution is not typically a violent offense). Until recently, if this analysis convinced a court that the crime posed a "serious potential risk of physical injury," it qualified as a "violent felony." James, 127 S. Ct. at 1594; United States v.

5

Wilkerson, 286 F.3d 1324, 1325 (11th Cir. 2002) (stating that non-overt act conspiracy to commit robbery presents a serious potential risk of physical harm, and concluding that it is an ACCA "violent felony").

After Begay, our analysis must go further. We must consider whether the prior crime is "roughly similar, in kind as well as in degree of risk posed" to an enumerated crime. Begay, 128 S. Ct. at 1585. For example, the Supreme Court concluded in Begay that despite the serious risk of physical harm posed by drunk driving, a felony DUI conviction was too dissimilar from the enumerated crimes to fall correctly under the Armed Career Criminal Act. The presence of enumerated crimes "indicates that the statute covers only similar crimes, rather than every crime that presents a serious potential risk of physical injury to another." Id. (citations and internal quotation marks omitted). Prior convictions must be "roughly similar, in kind as well as in degree of risk posed," to the enumerated crimes. They must involve "purposeful, violent, and aggressive conduct." Id. at 1585–86; see also Chambers, 129 S. Ct. at 692.

We therefore follow a "three-step inquiry" to determine if an offense is a "crime of violence." Harrison, 558 F.3d at 1287.

First, what is the relevant category of crime, determined by looking to how the crime is ordinarily committed? Second, does that crime pose a "serious

6

potential risk of physical injury" that is similar in degree to the risks posed by the enumerated crimes? Third, is that crime similar in kind to the enumerated crimes? Id.

### 1. The "Generic" Commission of the Offense

We turn first to South Carolina's "criminal conspiracy" statute, which defines the offense as "a combination . . . for the purpose of accomplishing an unlawful object or lawful object by unlawful means." S.C. Code Ann. § 16-17-410. The statute does not require an overt act. See State v. Crocker, 621 S.E. 2d 890, 896 (S.C. Ct. App. 2005) (noting the lack of an overt act requirement for criminal conspiracy). A plain reading, then, indicates that a person criminally conspires in South Carolina when he agrees with at least one other to perform an act unlawful in purpose or execution.

### 2. Similar in Degree of Harm

After examining the statute, we ascertain whether the typical commission of

the offense presents a serious risk of physical harm. After Begay, this risk must be similar in degree to that posed by section 4B1.1–2 enumerated offenses. Begay, 128 S. Ct. at 1585; Harrison, 558 F.3d at 1294. We have already concluded that conspiracies to commit violent crimes pose a risk of physical harm, though without the guidance in James and Begay. In Wilkerson v. United States, we determined that a non-overt act conspiracy to commit robbery was a violent crime. 286 F.3d at 1324–25. We did so with the understanding that when a target offense poses a serious potential risk of physical injury, a conspiracy to commit the target offense "likewise presents such a risk." Id. at 1325.

Conspiracies increase the potential risk of harm to others by raising the "chances that the planned crime will be committed [from] a mere possibility . . . . [to] a significant probability." Id. at 1326 (internal quotation marks omitted). We stand by Wilkerson as far as it concerns serious risk of physical injury; and its reasoning remains sound, even after Begay. If a conspiracy makes the commission of the target offense likelier, then conspiracy to commit a violent crime necessarily increases the risk of violence to others. And as we recognized in Wilkerson, when a defendant "reaches an agreement with a co-conspirator to commit a [violent crime] . . . his conduct presents at least a potential risk of physical injury" to others. Id. at 1325.

3. <u>Begay</u> Similarity in Kind

After <u>Begay</u>, we must consider whether criminal conspiracy is "similar, in kind as well as degree of risk posed" to the enumerated offenses. <u>Begay</u>, 128 S. Ct. at 1585–86. A crime is "roughly similar in kind" to listed offenses if it is characterized by "purposeful, violent, and aggressive conduct." <u>Id.</u> at 1586. Put another way, criminal conspiracy is only a "crime of violence" if the conspiracy, in itself, involves conduct that is purposeful, violent, and aggressive. We conclude that it does not.

Conspiring to commit a crime is a purposeful act. The statute itself requires that the conspirators intend that the target offense be committed. <u>See</u> <u>S.C. Code Ann.</u> § 16-17-410. But in South Carolina, the "gravamen of conspiracy is an agreement or combination. An overt act in furtherance of the conspiracy is not necessary to prove the crime." <u>Crocker</u>, 621 S.E. 2d at 896. To see how the simple act of agreeing is either "violent" or "aggressive" is difficult. No violence or aggression is associated with forming an agreement. Without more, agreement lacks the requisite violence and aggression to be "roughly similar in kind" to "burglary, arson," and the other enumerated crimes.

We have concluded that other conduct, more "confrontational" than mere

9

agreement, fails to satisfy the similarity test. In Harrison, we concluded that failing to obey a police officer's signals was not a violent crime. Harrison, 558 F.3d at 1294. The offense, in the "ordinary case, involves only a driver who willfully refuses to stop and continues driving on-but without high speed or recklessness . . . ." Id. Despite the admittedly "confrontational" nature of the offense, failure to stop a motor vehicle "without high speed or reckless conduct, is not sufficiently aggressive and violent enough to be like the enumerated ACCA crimes." Id. at 1295. Likewise, we concluded in Archer, 531 F.3d at 1351–52, that unlawful possession of a concealed weapon did not satisfy the similarity in kind inquiry. Unlike the enumerated offenses, which are "aggressive, violent acts aimed at other persons or property where persons might be located and thereby injured," possessing a concealed weapon is "passive" and unrelated to "overt action." Id. at 1351. The same reasoning supports our conclusion today. Unless a crime -- as generically committed -- involves purposeful, violent, and aggressive conduct, it does not satisfy the Begay similarity in kind test.

We know that the Fourth Circuit recently concluded that a conspiracy to commit robbery with a dangerous weapon is a violent crime under the ACCA. See United States v. White, 571 F.3d 365, 373 (4th Cir. 2009). Looking at the kind of problem we look at today, the Fourth Circuit in White reasoned that a conspiracy

10

"cannot be divorced from its violent objective." Id. at 372. The Fourth Circuit suggests that by increasing the likelihood of violent crime, a conspiracy is itself violent. Id. ("[B]y entering into a criminal partnership to commit . . . violent crime, conspirators render acts of violence . . . much more likely.").

In Whitson's case, the government has argued that White properly applies the Begay test. We respect the Fourth Circuit's judgment, but our duty requires that we not defer to it. And we cannot agree today. To us, White seems to conflate "degree of risk" with "kind of risk," without determining if the conspiracy by itself was violent. It may be true that a conspiracy and its target offense are linked, but as we understand it, the Begay analysis requires us to separate them and to examine the conspiracy alone. Only if that examination reveals violence and aggression in the typical case is the offense a "crime of violence."

Seeing no violence or aggression in the act of agreement, we conclude that non-overt act conspiracy is not a section 4B1.1 "crime of violence." Accordingly, we VACATE Whitson's sentence and REMAND for resentencing consistent with this opinion.

VACATED and REMANDED.