[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10926

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 2, 2011
JOHN LEY
CLERK

D. C. Docket No. 1:07-cr-00071-DHB-WLB-1

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

SHAWNTRAIL J. LEE,
a.k.a. Billy Darkside,
a.k.a. Jathen Lee,
a.k.a. Jermaine Wilder,
a.k.a. Shawn Lee,
a.k.a. Rahshaun Frost,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(February 2, 2011)

Before WILSON and PRYOR, Circuit Judges, and BUCKLEW,* District Judge.

_____

* Honorable Susan C. Bucklew, United States District Judge for the Middle District of Florida,
sitting by designation.

BUCKLEW, District Judge:

Appellant Shawntrail J. Lee appeals his sentence of 120 months' imprisonment, after a jury found him guilty of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). The district court sentenced Lee as a career offender under U.S. Sentencing Guidelines Section 2K2.1(a)(2), after finding that he had two prior felony convictions for crimes of violence. At issue is whether the district court erred in ruling that Lee's prior New Jersey felony convictions for eluding police in the second degree and for conspiracy to commit armed robbery were crimes of violence, as defined in U.S.S.G. § 4B1.2(a), for purposes of the career offender enhancement.

## I.    Background

Lee was indicted on one count of possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g). A jury found Lee guilty, and he was initially sentenced to 180 months' imprisonment, after the district court determined that he was an armed career criminal with three prior violent felony convictions under New Jersey law: "walkaway" escape, eluding police in the second degree, and conspiracy to commit armed robbery.

Lee appealed that conviction and sentence. This Court affirmed the conviction, but vacated and remanded for resentencing, holding that one of Lee's

2

three prior felony convictions–the "walkaway" escape–was not a violent felony under 18 U.S.C. § 924(e)(2)(B)(ii) of the Armed Career Criminal Act. *United States v. Lee*, 586 F.3d 859 (11th Cir. 2009). The Court declined to address the eluding and conspiracy predicate convictions in that opinion. *Id.* at 874 n.11.

On remand, the probation officer prepared an amended presentence investigation report, in which she categorized Lee's eluding and conspiracy convictions as crimes of violence. Because Lee had two predicate convictions for crimes of violence, the probation officer recommended that he be sentenced as a career offender pursuant to U.S.S.G. § 2K2.1(a)(2).

At the re-sentencing hearing, Lee objected that his offense of eluding police in the second degree was not a crime of violence. The district court also permitted Lee to adopt and incorporate an objection that he lodged at the original sentencing hearing that the government had not established that his prior conviction for conspiracy involved the underlying offense of armed robbery, and that, nevertheless, the conviction did not constitute a crime of violence.

The district court overruled these objections and found that the New Jersey crime of eluding in the second degree was categorically a crime of violence because the crime is defined as a flight or attempt to elude police that "creates a risk of death or injury to any person." N.J. Stat. Ann. § 2C:29-2b. The district

3

court also reincorporated its finding at the original sentencing hearing that sufficient judicial records from New Jersey established that Lee's prior conviction for conspiracy involved the underlying offense of armed robbery, and that such conviction categorically constituted a crime of violence.

Lee was sentenced to the statutory maximum of 120 months, pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2). This appeal followed.

## II.    Discussion

Lee challenges his 120 month sentence on the grounds that the district court erred in finding that his prior New Jersey convictions for eluding police in the second degree and for conspiracy to commit armed robbery were crimes of violence under U.S.S.G. § 4B1.2(a). This Court reviews *de novo* whether a defendant's prior conviction qualifies as a crime of violence under the U.S. Sentencing Guidelines. *United States v. Harris*, 586 F.3d 1283, 1284 (11th Cir. 2009).

Under U.S. Sentencing Guidelines Section 2K2.1(a)(2), felons receive a base offense level of 24 if they committed a firearm offense "subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." The Sentencing Guidelines provide the following definition:

The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that–

    (1)    has as an element the use, attempted use, or threatened use of physical force against the person of another, or

    (2)    is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). The phrase, "or otherwise involves conduct that presents a serious potential risk of physical injury to another," is referred to as the "residual provision," or residual clause. *Harris*, 586 F.3d at 1285. This appeal addresses whether Lee's prior violations of New Jersey's eluding and conspiracy statutes, N.J. Stat. Ann. §§ 2C:29-2b and 2C:5-2, fall under the residual clause.

We follow a three-step inquiry for determining whether a prior conviction constitutes a crime of violence under the residual clause:

First, what is the relevant category of crime, determined by looking to how the crime is ordinarily committed? Second, does that crime pose a "serious potential risk of physical injury" that is similar in degree to the risks posed by the enumerated crimes? Third, is that crime similar in kind to the enumerated crimes?

*United States v. Harrison*, 558 F.3d 1280, 1287 (11th Cir. 2009). In making this determination, we use the "categorical approach," which "looks only to the fact of conviction and the statutory definition of the prior offense without examining particular facts disclosed by the record of conviction." *United States v. Whitson*,

5

597 F.3d 1218, 1220 (11th Cir. 2010) (per curiam) (citations, internal quotations, and alterations omitted).[1]

### A.    Eluding Police in the Second Degree

In *Harris*, this Court considered whether the second degree felony of willfully fleeing or attempting to elude a police officer under Florida law, a crime which required that the defendant drive at high speed or "demonstrate[] a wanton disregard for the safety of persons or property," constituted a crime of violence under the Sentencing Guidelines.  586 F.3d at 1284 (quoting Fla. Stat. § 316.1935(3)(a)).  Using the three-step inquiry listed above to analyze the crime as it is ordinarily committed, the Court determined that the Florida offense was a crime of violence because it was clear from the face of the statute that it was similar in kind and degree of risk to the enumerated crimes.  *Id.* at 1288.  The Court reasoned that "[f]leeing from the police at high speed or with 'a wanton disregard for the safety of persons or property' does indeed 'show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger.'"  *Id.* (quoting Fla. Stat. § 316.1935(3)(a) and *Begay v.*

---

[1]However, a court may examine the underlying facts of the conviction, if "ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself."  *Harris*, 586 F.3d at 1286 n.1 (quoting *United States v. Beckles*, 565 F.3d 832, 842–43 (11th Cir. 2009)).

6

*United States*, 553 U.S. 137, 146, 128 S. Ct. 1581, 1587, 170 L. Ed. 2d 490 (2008)).

The Court determined that the act of fleeing the police was "undeniably purposeful," as willfulness is an explicit element of the statute. *Harris*, 586 F.3d at 1288. Furthermore, the Court ruled that the offense was violent and aggressive because, "[i]n the 'ordinary case,' roadways are populated by other travelers whom the offender and the officer will have to avoid hitting in the course of a high speed chase." *Id.* (quoting *James v. United States*, 550 U.S. 192, 208, 127 S. Ct. 1586, 1597, 167 L. Ed. 2d 532 (2007)). Thus, fleeing the police at high speed is "like holding a weapon out, ready to fire," or "[l]ike an arsonist lighting a fire without regard for harm the fire may cause." *Id.* at 1288–89.

In reaching this conclusion, the Court distinguished second degree eluding from third degree eluding, a crime which the Court found not to be a violent felony in *United States v. Harrison*, 558 F.3d 1280 (11th Cir. 2009). *Id.* at 1287. In *Harrison*, the Court concluded that the Florida crime of third degree eluding, as ordinarily committed, did not constitute a violent felony because it did not require either high speed or a wanton disregard for safety, and therefore did not entail the same high level of risk as the enumerated crimes. 558 F.3d at 1294.

*Harris* is instructive due to the similarities between the Florida and New

Jersey crimes of second degree eluding.[2]   Here, the parties agree that Lee was convicted under Section 2C:29-2b of the New Jersey Statutes, which reads:

> Any person, while operating a motor vehicle on any street or highway in this State . . . who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle . . . to a full stop commits a crime of the third degree; except that, a person is guilty of a crime of the second degree if the flight or attempt to elude creates a risk of death or injury to any person.

N.J. Stat. Ann. § 2C:29-2b.  We begin by reading the face of the statute "itself to discern the crime as it is ordinarily committed."  *Harris*, 586 F.3d at 1288.  This statute contains elements that are very similar to the Florida second degree eluding statute: (1) a law enforcement officer signals a motorist to stop; (2) the motorist knowingly flees or attempts to elude the officer; and (3) the flight or attempt to elude "creates a risk of death or injury to any person."  N.J. Stat. Ann. § 2C:29-2b.

We next "rely on our own common-sense analysis of whether this [crime] poses a serious potential risk of physical injury."  *United States v. Alexander*, 609 F.3d 1250, 1257 (11th Cir. 2010).  Like the Florida eluding statute, it is clear from the face of the New Jersey statute that this crime presents a serious potential risk

---

[2]The Court is also persuaded by caselaw from other circuits in which analogous state eluding laws were found to be predicate offenses under the Armed Career Criminal Act ("ACCA").  *See Harris*, 586 F.3d at 1285, 1289 n.2 (listing cases and noting that the definition of a violent felony under the ACCA is "virtually identical" to the definition of a crime of violence under the Sentencing Guidelines).

of physical injury that is similar in degree to the risks posed by the enumerated crimes. This is because, like the Florida statute's requirement that the flight be committed with "a wanton disregard for the safety of persons or property," this statute contains the essential element that the flight "creates a risk of death or injury to any person." Fla. Stat. § 316.1935(3)(a); N.J. Stat. Ann. § 2C:29-2b.

Furthermore, the New Jersey crime of second degree eluding must be committed "knowingly" after the motorist receives a signal from law enforcement, and therefore, it involves a purposeful act. N.J. Stat. Ann. § 2C:29-2b; *see Harris*, 586 F.3d at 1288 (noting that, because willfulness is an expressed element of the Florida statute, this "suggests that the driver has seen the siren and lights of the police car, recognized that the officer wanted him to stop, and deliberately disobeyed the order in a dangerous fashion"). The New Jersey offense is also necessarily violent and aggressive because it requires that the motorist flee law enforcement in such a way that the flight "creates a risk of death or injury to any person." N.J. Stat. Ann. § 2C:29-2b; *see Harris*, 586 F.3d at 1288 (reasoning that "[t]he offender who eludes a police officer at [high] speeds . . . necessarily poses a powerful risk to the arresting officer, pedestrians, and other drivers and passengers in their own cars").

We reject Lee's contention that, because second degree eluding under New

Jersey law criminalizes flight that creates a risk of injury to "any person," including the defendant himself, it is a strict liability offense that cannot qualify as a crime of violence. *Cf. United States v. Harris*, 608 F.3d 1222, 1224 (11th Cir. 2010) (acknowledging "the holding of *Begay v. United States*, 553 U.S. 137, 143, 128 S. Ct. 1581, 1585, 170 L. Ed. 2d 490 (2008), that strict liability crimes are not 'roughly similar' to burglary, arson, extortion, or an offense involving the use of explosives and therefore do not come within the residual clause"). We are required to analyze how the crime is ordinarily committed. *Harris*, 586 F.3d at 1288. "In the 'ordinary case,' roadways are populated by other travelers whom the offender and the officer will have to avoid hitting in the course of a high speed chase." *Id.* (citation omitted). Therefore, the motorist who knowingly flees from law enforcement in such a way that the flight creates a risk of death or injury to "any person" poses a risk not only to himself, but to other drivers, passengers, pedestrians, and law enforcement officers.

In analyzing the New Jersey crime of second degree eluding as it is ordinarily committed, we reach the same conclusion that we reached in *Harris*: that knowingly fleeing law enforcement, when that flight creates a risk of death or injury to any person, is categorically a crime of violence under U.S.S.G. § 4B1.2(a). As we stated in *Harris*, "[f]leeing at high speed or with wanton

10

disregard for safety amounts to holding a finger on the trigger of a deadly weapon, without care for whom the bullet may strike." 586 F.3d at 1289.

###### B.    Conspiracy to Commit Armed Robbery

The next issue is whether Lee's felony conviction for conspiracy to commit armed robbery, under New Jersey Statute Section 2C:5-2, qualifies as a crime of violence under the residual clause of U.S.S.G. § 4B1.2(a). After the Court heard oral arguments, the government conceded that Lee's conspiracy conviction does not qualify categorically as a crime of violence. With the government's concession in mind, the Court proceeds to address the merits of this issue.

The Court first must determine if the New Jersey crime of conspiracy to commit armed robbery is a non-overt act conspiracy, or an overt act conspiracy. This is because a "non-overt act conspiracy is *not* a section 4B1.1 'crime of violence.'" *Whitson*, 597 F.3d at 1223 (emphasis added).[3]    "[C]riminal conspiracy is only a 'crime of violence' if the conspiracy, in itself, involves conduct that is purposeful, violent, and aggressive." *Id.* at 1222.  If the conspiracy does not require an overt act, then there is no such "purposeful, violent, [or] aggressive conduct" to make it a crime of violence under *Begay*. *Id.*

---

[3]The district court conducted Lee's re-sentencing hearing on February 18, 2010–one week before *Whitson* was decided on February 24, 2010, and thus did not have the benefit of this case when it considered whether the New Jersey conspiracy was a crime of violence.

The New Jersey criminal conspiracy statute provides the following:

A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:
> (1)    Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime . . . ; or
> (2)    Agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

N.J. Stat. Ann. § 2C:5-2a.  Furthermore, regarding an overt act, the statute provides:

No person may be convicted of conspiracy to commit a crime *other than a crime of the first or second degree* . . . unless an overt act in pursuance of such conspiracy is proved to have been done by him or by a person with whom he conspired.

*Id.* at d (emphasis added).  In other words, if the object of the conspiracy is a crime of the first or second degree, the state need not prove that the defendant committed an overt act in furtherance of the conspiracy.  *State v. Scherzer,* 694 A.2d 196, 214 (N.J. Super. Ct. App. Div. 1997) (holding that "[w]hen the State prosecutes a defendant for conspiracy to commit a first or second degree crime, it need not prove that [the] defendant committed an overt act in pursuance of the conspiracy").

12

In New Jersey, armed robbery is a crime of the first degree.[4] N.J. Stat. Ann. § 2C:15-1b (providing that "[r]obbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor . . . is armed with . . . a deadly weapon"). Therefore, conspiracy to commit armed robbery does not require an overt act under New Jersey law. And, because it is a non-overt act conspiracy, under *Whitson*, it is also *not* a crime of violence under the Sentencing Guidelines.

Accordingly, we conclude that the district court erred when it ruled that Lee's New Jersey conviction for conspiracy to commit armed robbery was categorically a crime of violence.

## III. Conclusion

Lee appeals his sentence of 120 months on the grounds that the district court erred in finding that his prior New Jersey convictions for eluding police in the second degree and for conspiracy to commit armed robbery were crimes of violence under U.S.S.G. § 4B1.2(a). We conclude that the New Jersey felony of eluding police in the second degree is a crime of violence, but that the New Jersey

---

[4]At oral argument, Lee abandoned his position that the government had not established that the conspiracy involved the underlying offense of armed robbery, a first degree offense. Lee in fact conceded that the object of the conspiracy was robbery in at least the second degree. Proof of an overt act is not required for conspiracy to commit either first or second degree robbery. *Scherzer,* 694 A.2d at 214.

felony of conspiracy to commit armed robbery is not. Accordingly, because Lee's conspiracy conviction is not a crime of violence, we VACATE his sentence, and REMAND to the district court for resentencing consistent with this opinion.

**VACATED and REMANDED.**