[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10874
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 10, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00148-CR-FTM-29DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEROME LAYTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 10, 2009)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Jerome Layton appeals his 120-month sentence for possessing with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Layton argues that his prior conviction for fleeing and attempting to elude a law enforcement officer, in violation of Fla. Stat. § 316.1935(3), is not a "crime of violence" for purposes of the career offender enhancement set forth in U.S.S.G. § 4B1.2(a)(2). He also argues that his 120-month sentence is substantively unreasonable.

## I.

In July 2007, a confidential source informed the Naples, Florida Police Department that Layton sold crack cocaine. In August 2007, Layton twice met with an undercover detective ("UC") and provided the UC with crack cocaine in exchange for money. Layton was eventually arrested.

The presentence investigation report ("PSI") classified Layton as a career offender under U.S.S.G. § 4B1.1, because he had two prior felony convictions for crimes of violence. These prior felonies were listed as "Flee/Attempted Elude High Speed and Reckless (Fla. Stat. § 316.1935(3))," and "Burglary of an Occupied Dwelling." With regard to the Fla. Stat. § 316.1935(3) violation, the PSI explained that deputies attempted to arrest Zachary Williams, who was trespassing at an apartment complex, but before deputies could arrest Williams, he fled the

2

scene in a vehicle driven by Layton. Deputies followed Layton's vehicle in a marked police car with overhead lights activated. Layton "failed to stop at stop signs, spe[]d, cross[ed] over lanes, hit a parked vehicle, and continue[d] traveling recklessly." Layton eventually stopped the vehicle after almost hitting a deputy's vehicle. Layton then exited the vehicle and fled on foot, but was soon apprehended.

Pursuant to U.S.S.G. § 4B1.1(b)(C), Layton's total offense level as a career offender was enhanced to 32, although he received a three-level reduction for acceptance of responsibility, resulting in an enhanced offense level of 29. Because Layton was a career offender, his criminal history category was enhanced to category VI, which combined with his offense level to yield a guideline imprisonment range of 151 to 188 months.

Layton filed objections to the PSI, two of which are relevant to the instant appeal. First, Layton objected that he should not be considered a career offender under U.S.S.G. § 4B1.2, because his conviction for fleeing/attempting to elude under Fla. Stat. § 316.1935(3) did not qualify as a crime of violence. Layton also argued that he should receive a downward departure, because the career offender enhancement overrepresented his criminal history. Layton did not object to the description of the conduct underlying the fleeing and eluding offense listed in the

3

PSI.

At the sentencing hearing, Layton renewed his two previous objections and also argued for a below-guideline sentence, pursuant to United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621, noting that his mother had died when he was 11 years old, at which time he was sent to live with his father, who he did not really know and with whom he did not get along. He noted that he had a learning disability and had dropped out of school and experimented with marijuana and cocaine, which he began smoking at age 15.

The district court overruled Layton's objection to the application of the career offender enhancement, finding that binding precedent held that Fla. Stat. § 316.1935(3) constituted a crime of violence. The court granted a departure, pursuant to U.S.S.G. § 4A1.3, finding that criminal history category VI significantly overrepresented Layton's criminal history. Thus, Layton's criminal history category was reduced to V, and his guideline sentencing range was reduced to 140 to 175 months. The court stated that it had considered the 18 U.S.C. § 3553(a) sentencing factors, granted Layton's request for a variance, and sentenced Layton to 120 months' imprisonment, followed by 3 years' supervised release. Layton objected to the court's application of the career offender enhancement and the reasonableness of the sentence.

## II.

### *Career Offender Enhancement*

We review a district court's application and interpretation of the sentencing guidelines de novo. United States v. Wilks, 464 F.3d 1240, 1242 (11th Cir. 2006).

Fla. Stat. § 316.1935(3) provides that:

> Any person who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with siren and lights activated, and during the course of the fleeing or attempted eluding:
>
> (a) Drives at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property, commits a felony of the second degree. . . .
>
> (B) Drives at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property, and causes serious bodily injury or death to another person . . . commits a felony of the first degree. . . .

Fla. Stat. § 316.1935(3).

The career offender guideline defines a "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, <u>or otherwise involves conduct that presents a serious potential risk of physical injury to another.</u>

U.S.S.G. § 4B1.2(a) (emphasis added).

The analysis we use to determine whether an offense is a "crime of violence" under the career offender guideline is the same analysis we use to determine whether an offense is a "violent felony" under the "residual clause" of the Armed Career Criminal Act ("ACCA"). <u>See</u> <u>United States v. Archer</u>, 531 F.3d 1347, 1352 (11th Cir. 2008) (noting that "[t]his [C]ourt has repeatedly read the definition of a 'violent felony' under § 924(e) of the Armed Career Criminal Act as 'virtually identical' to the definition of a 'crime of violence' under U.S.S.G. § 4B1.2" and applying ACCA analysis to examine whether an offense is a "crime of violence" under the career offender guideline); <u>United States v. Harrison</u>, 558 F.3d 1280, 1291 (11th Cir. 2009) ("The language of U.S.S.G. § 4B1.2(a)(2) is identical to the ACCA's residual clause in all material respects.").

We have previously determined that the specific offense at issue in this case – willful fleeing and eluding under Fla. Stat. § 316.1935(3) – constitutes a crime of violence under U.S.S.G. § 4B1.2. <u>United States v. Orisnord</u>, 483 F.3d 1169, 1183 (11th Cir.), <u>cert. denied</u>, <u>Polynice v. United States</u>, 128 S.Ct. 673 (2007). In <u>Orisnord</u>, we determined that "the 'potential risk' of injury, rather than actual

6

violence or actual injury, is the touchstone of a 'crime of violence,'" and that "[t]he dangerous circumstances surrounding a person's attempt to flee from law enforcement coupled with the person's operation of a motor vehicle most assuredly presents a 'potential risk of physical injury' to others." Id. at 1182.

Orisnord, however, was decided before the Supreme Court's decision in Begay v. United States, 553 U.S. __, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), which established a three-step inquiry for determining whether an offense qualifies as a violent felony under the residual clause of the ACCA and, therefore, as a crime of violence under U.S.S.G. § 4B1.2. See id. at __, 128 S.Ct. at 1585-88. We have summarized Begay's three-step approach as follows:

> First, what is the relevant category of crime, determined by looking to how the crime is ordinarily committed? Second, does that crime pose a "serious potential risk of physical injury" that is similar in degree to the risks posed by the enumerated crimes? Third, is that crime similar in kind to the enumerated crimes?

Harrison, 558 F.3d at 1287. With regard to the first step, courts should "consider the offense as defined by the law, rather than considering the facts of the specific violation." Archer, 531 F.3d at 1350. With respect to the third step, the Supreme Court noted that the enumerated crimes – burglary, arson, extortion, and the use of explosives – "all typically involve purposeful, 'violent,' and 'aggressive' conduct," as opposed to "crimes that impose strict liability, criminalizing conduct in respect

7

to which the offender need not have had any criminal intent at all."[1] Begay, 553 U.S. at __, 128 S.Ct. at 1586-87.

After Begay was decided, we were confronted with the issue of whether a defendant's conviction under Fla. Stat. § 316.1935(2) constituted a violent felony under the ACCA. Harrison, 558 F.3d at 1284. In contrast to § 316.1935(3), Fla. Stat. § 316.1935(2) does not require, as an element of the offense, that the offender travel at a high rate of speed or exhibit a wanton disregard for persons or property. See id. at 1293; compare Fla. Stat. § 316.1935(2) with Fla. Stat. § 316.1935(3). We specifically noted that "[t]he dangerous conduct ordinarily underlying a violation of § 316.1935(3) . . . presents a serious potential risk of injury." Harrison, 558 F.3d at 1284. In holding that § 316.1935(2) is not a violent felony, we determined that "the willful decision not to follow a police officer's signal is 'purposeful;'" however, "without high speed or reckless conduct, [disobeying an officer's signal] is not sufficiently aggressive and violent enough to be like the enumerated ACCA crimes." Id. at 1295.

Our court recently reviewed Fla. Stat. § 316.1935(3) in the context of deciding whether or not a conviction under that section of the statute would qualify

---

[1]The offenses enumerated in the ACCA are identical to the offenses listed in U.S.S.G. § 4B1.2 with one exception. While the ACCA lists "burglary" as a violent felony, see 18 U.S.C. § 924(e), § 4B1.2 lists "burglary of a dwelling" as a crime of violence, see U.S.S.G. § 4B1.2.

as a crime of violence for Sentencing Guideline purposes and under U.S.S.G. §§ 4B1.2 and 2K2.1(a)(4)(A). We analyzed such a conviction by following the steps set forth in Begay and concluded that: "Fleeing at high speed or with wanton disregard for safety amounts to holding a finger on the trigger of a deadly weapon, without care for whom the bullet may strike." United States v. Harris, __ F.3d __, 2009 WL 3595130 at 7 (C.A. 11 (Fla.)). Thus, we have resolved any doubt and answered in the affirmative. The ruling of the district court in applying the career offender enhancement was proper and correct.

*Reasonableness of Sentence*

We may review a sentence for procedural or substantive reasonableness. Gall v. United States, 552 U.S. __, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). In considering the substantive reasonableness of a sentence, we consider the totality of the circumstances, and apply an abuse of discretion standard, under which we reverse only if we find "that the district court has made a clear error of judgment." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008). The party challenging the sentence "bears the burden of establishing that the sentence is unreasonable in light of both th[e] record and the factors in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

"[T]he district judge should then consider all of the § 3553(a) factors to

9

determine whether they support the sentence requested by a party." Gall, 552 U.S. at __, 128 S.Ct. at 596. The factors in § 3553(a) that the court must consider are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.

Talley, 431 F.3d at 786 (citing 18 U.S.C. § 3553(a)).

"We may find that a district court has abused its considerable discretion if it has weighed the factors in a manner that demonstrably yields an unreasonable sentence." Pugh, 515 F.3d at 1191. Normally, however, the decision of how much weight to accord particular factors in devising a sentence is within the discretion of the district court. United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007).

The record in this case shows neither procedural nor substantive error. The correct guideline range was 151-188 months. The sentencing judge departed downward to 120 months. In light of the § 3553(a) factors, Layton's 120-month sentence is substantively reasonable. In sentencing Layton, the court stated that it had considered the § 3553(a) factors and found that a 120-month sentence was

reasonable. Layton benefitted from a § 4A1.3 departure as well as a variance, which the court granted after hearing about Layton's problems as a child. In light of Layton's prior criminal history, the court did not err in refusing to grant a greater departure. Layton's criminal history began at age seven and the crimes he committed increased in severity over time. Although Layton expressed remorse for his actions, his failure to cease criminal activity in the past indicated that a significant sentence was necessary to deter him from committing future crimes. Furthermore, the fact that Layton may have received lenient sentences in the past does not entitle him to a further reduction in the present case. Layton's sentence was well below the low end of his applicable guideline range and, in light of his criminal history of drug abuse, was not substantively unreasonable.

AFFIRMED.