Larry Gene **WELCH**, Appellant,

v.

**STATE of Missouri, Respondent.**

No. WD 71156.

Missouri Court of Appeals, Western District.

Dec. 21, 2010.

---

Margaret Johnston, Columbia, MO, for Appellant.

Shaun Mackelprang, Jefferson City, MO, for Respondent.

Before JAMES EDWARD WELSH, P.J., MARK D. PFEIFFER, and KAREN KING MITCHELL, JJ.

JAMES EDWARD WELSH, Presiding Judge.

Larry Gene Welch appeals the circuit court's judgment denying his Rule 24.035 motion for post-conviction relief. He claims that the circuit court clearly erred in denying his motion because he proved that he was prejudiced by plea counsel's erroneously advising him that he would serve only forty to fifty percent of his sentence prior to parole eligibility when, in fact, the statute required him to serve a minimum of eighty-five percent before becoming eligible for parole. We affirm.

Welch was indicted on two counts of involuntary manslaughter and two counts of second-degree assault. During his guilty plea hearing, Welch admitted that, on the morning of November 4, 2007, he was driving his truck on Route C in Cole County. Although Welch was traveling east, he was driving in the westbound lane. A car, occupied by Eric and Jean Olsen and their two children, Tobias and Johanna, approached. The Olsens were traveling west in the westbound lane. To avoid Welch's truck, Eric Olsen, who was driving, swerved into the eastbound lane. At the same time, Welch swerved into the eastbound lane and hit the passenger side of the Olsens' car. The collision killed Jean and Tobias Olsen. Eric and Johanna Olsen survived the crash but suffered permanent injuries. Welch admitted that his negligence caused the collision and that his blood alcohol content at the time was "in excess of what the law presumes to be impaired."

Welch offered his plea of guilty as a "blind plea," because he had no plea agreement with the State. The court informed Welch that the range of punishment on each of the two involuntary manslaughter charges was five to fifteen years in prison, and the punishment on each of the two second-degree assault charges ranged from a fine to up to seven years in prison. Welch testified that he understood the range of punishment on all of the charges. The court accepted Welch's guilty plea after finding that it was knowingly and voluntarily made. The court sentenced Welch to two concurrent terms of fifteen

years imprisonment on the involuntary manslaughter convictions and two terms of five years imprisonment on the second-degree assault convictions. The sentences for the second-degree assault convictions were to run concurrently with each other but consecutively to the sentences for the involuntary manslaughter convictions. Hence, Welch's consecutive sentences total twenty years imprisonment.

Welch subsequently filed a timely Rule 24.035 motion for post-conviction relief. In his motion, he alleged that his plea counsel was ineffective for misinforming him that he would have to serve only forty to fifty percent of his sentence prior to parole eligibility, instead of the statutorily-required eighty-five percent, which was applicable to his involuntary manslaughter convictions.[1] The court held an evidentiary hearing on Welch's motion.

During the evidentiary hearing, Welch testified that his plea counsel had told him that he would have to serve approximately forty to fifty percent of his sentence prior to parole eligibility. Welch further testified that, if he had known that he was going to have to serve eighty-five percent of his sentence prior to parole eligibility, he would not have entered his guilty plea. On cross-examination, Welch admitted that, when he entered his plea, he was aware that the court could have given him consecutive sentences totaling forty-four years imprisonment pursuant to the maximum range of punishment for each of his offenses. Welch's plea counsel also testi-

fied at the hearing. Plea counsel testified that he had misread the statute and erroneously advised Welch that he would have to serve approximately fifty percent of his sentence before becoming eligible for parole.

The circuit court denied Welch's motion. In its judgment, the circuit court assumed, without deciding, that plea counsel's erroneous advice regarding the percentage of time Welch would have to serve fell below an objective standard of reasonableness.[2] The circuit court concluded, however, that Welch failed to demonstrate that he was prejudiced by counsel's erroneous advice. Welch appeals.

■ Our review of the circuit court's ruling on a Rule 24.035 motion is limited to determining whether its findings and conclusions are clearly erroneous. Rule 24.035(k). Findings and conclusions are clearly erroneous only if we have a definite and firm impression that a mistake was made. *Dobbins v. State*, 187 S.W.3d 865, 866 (Mo. banc 2006). By pleading guilty, Welch "waived any claim that counsel was ineffective except to the extent that the conduct affected the voluntariness and knowledge with which the plea was made." *Worthington v. State*, 166 S.W.3d 566, 573 (Mo. banc 2005). Welch claims that his plea was involuntarily and unknowingly made because his plea counsel misinformed him that he would be eligible for parole after serving forty to fifty percent of his sentence instead of the statutorily-required eighty-five percent.

---

1. Section 565.024.2, RSMo Cum.Supp.2006, requires that a defendant convicted of involuntary manslaughter under these circumstances serve a minimum of eighty-five percent of his sentence.

2. The circuit court's assumption was correct. In *Miller v. State*, 260 S.W.3d 393, 395 (Mo. App.2008), a case with strikingly similar facts, we found that plea counsel provided ineffec-

tive assistance when he erroneously advised Miller that she would be eligible for parole after serving forty percent of her sentence instead of eighty-five percent. We ultimately rejected Miller's claim, however, after finding that the record did not support her assertion that, but for counsel's erroneous advice, she would not have pleaded guilty but would have insisted upon going to trial. *Id.* at 395–96.

■ To succeed on his claim of ineffective assistance of counsel, Welch must show by a preponderance of the evidence that his plea counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that he was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Welch must satisfy both prongs— ineffective assistance and prejudice—to be entitled to relief. *Haskett v. State*, 152 S.W.3d 906, 909 (Mo.App.2005). If Welch fails to show either ineffective assistance or prejudice, we do not need to consider the other. *Id.*

■ In his sole point on appeal, Welch claims that the circuit court clearly erred in concluding that he failed to establish prejudice from his plea counsel's erroneous advice about his parole eligibility. He argues that the evidence established that the case against him, while emotionally compelling, was factually only "average." Specifically, he claims that there were many facts in his favor, such as that the only evidence of his blood alcohol content at the time of the collision was based solely upon retrograde extrapolation;[3] the collision happened at 10:30 a.m. on a Sunday; and the collision actually occurred while Welch was driving in his own lane. Because of these facts, Welch contends that there is a reasonable probability that, but for his plea counsel's erroneous advice concerning his parole eligibility, he would have chosen to go to trial rather than to plead guilty. We disagree.

The record before us does not support Welch's claim that these facts were actually favorable to the defense. Welch contends that, because his blood alcohol content was derived from retrograde extrapolation, "[t]here might have been a persuasive defense argument as to reasonable doubt," but he offers nothing to support this bare assertion. Moreover, that the collision occurred at 10:30 on a Sunday morning is hardly favorable to Welch. While the Olsen family was driving home from church, Welch was driving while impaired, mid-morning on a Sunday. Lastly, although the collision may have occurred in Welch's lane, the evidence was that, immediately before the collision, Welch was driving in the wrong lane and Eric Olsen swerved into what should have been Welch's lane only to avoid hitting Welch, who then swerved into his lane and hit the Olsens. These facts do not provide a basis for concluding that, but for his plea counsel's erroneous advice concerning parole eligibility, there is a reasonable probability that Welch would have insisted on going to trial.

Even if these facts could be viewed as favorable to the defense, however, the facts and circumstances unfavorable to the defense were compelling and quite damning. Welch's plea counsel testified at the evidentiary hearing that he had advised Welch that a jury trial would not be in his best interest because (1) Welch's entire defense would rest largely upon Welch's testimony, and Welch would not be a good witness due to his flat demeanor, poor memory, and prior convictions;[4] (2) the

3. Welch's blood alcohol content was not tested until three hours after the collision. At that time, it was below .08 percent. Based upon this reading, a chemist for the State extrapolated that Welch's blood alcohol content at the time of the collision was .12 percent.

4. The record is unclear as to whether Welch's prior convictions were alcohol related. His plea counsel testified that Welch had "some priors" and that they did not "necessarily appear to be alcohol-related." Nevertheless, even if they were not alcohol related, Welch's

State's evidence against Welch included graphic and gruesome photographs of the collision and the victims that would elicit "huge emotion" on the part of the jury; and (3) the jury's sympathy would clearly lie with the victims, as the collision caused the deaths of two members of the Olsen family. The circuit court agreed with this assessment of the weaknesses of the defense, finding that Welch was not a strong witness during the evidentiary hearing, that some of the State's photographs depicting the "devastating nature of the crash and the fatal injuries suffered by Jean and Tobias Olsen" would have been admissible, and that the evidence against Welch was both "strong and aggravating" and would show that Welch, "in an instant, killed half a family." [5]

The court found that, given these "harsh facts," and in light of the possible sentence that Welch could have faced compared to the sentence he actually received, Welch's assertion that he would have proceeded to trial had he known about the eighty-five percent rule was "incredible." We defer to the circuit court's credibility determinations in a post-conviction relief proceeding. *Miller v. State*, 260 S.W.3d 393, 396 (Mo. App.2008).

We, therefore, affirm the circuit court's judgment denying Welch's Rule 24.035 motion.

All concur.

---

prior convictions would have impacted his credibility as a witness.

5. We note that Welch would have remained subject to the eighty-five percent rule with

respect to the involuntary manslaughter charges whether he pled guilty or took his case to trial.