STRANCH, Circuit Judge,
concurring.
Edward Young received a mandatory fifteen-year prison sentence for the crime of having in a drawer in his home seven shotgun shells belonging to his widowed neighbor. Young was then caught in the dragnet of the Armed Career Criminal Act (ÁCCA) which imposes the same minimum sentence on a person who acquires shotgun shells passively as it does on a recently-released felon who possesses automatic weapons. See 18 U.S.C. §§ 921(a)(3)(A), 922(g)(1), 924(e)(1).
The district court did not make the sentencing decision lightly. Judge Collier compared Young’s story to a Charles Dickens novel and noted that “[a] lot of people think these laws are unfair.” In the end, however, Judge Collier determined that binding precedent left him with no discretion in the case. He sentenced Young to the mandatory fifteen-year sentence, suggested that “this is an issue the appellate courts and perhaps the Supreme Court will one day address” and encouraged Young to appeal.
Precedent compels us to conclude that this sentence does not violate the Constitution. But holding that a sentence is constitutional does not make the sentence just. As our former colleague representing the Judicial Conference described it, “[mjandatory minimum sentences mean one-size-fits-all injustice.” Statement on Behalf of the Judicial Conference of the United States from U.S. District Judge Paul Cassell before the House Judiciary Committee Subcommittee on Crime, Terrorism, and Homeland Security, 19 Fed. Sent. R. 344, 344-47 (2007) (declaring widespread and judicial opposition to the use of mandatory minimum sentencing). This is not a newly minted or passing concern — since the early 1950s, the Judicial Conference has expressed its consistent and insistent opposition to mandatory minimum sentences. Id.
Even if we put aside the well-recognized concerns calling into question the propriety and effectiveness of mandatory minimums as a whole, problems with the ACCA’s over-inclusive provisions remain. The concept behind mandatory minimum sentencing was to identify dangerous felons likely to cause public harm and achieve the important goal of removing them from society. For an individual not posing that level of dangerousness, district court judges most familiar with that particular *631 defendant were to retain the discretion to impose a more appropriate sentence. The disproportionately broad sweep of the ACCA betrays that core purpose and in doing so undercuts public confidence in our national commitment to a fair and equitable criminal justice system.
Throughout the ACCA’s long history of enactments and revisions, “Congress focused its efforts on career offenders— those who commit a large number of fairly serious crimes ... and who, because they possess weapons, present at least a potential threat of harm to persons.” See generally, Taylor v. United States, 495 U.S. 575, 587-88, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (discussing history of enactment and revisions of the ACCA); accord Begay v. United States, 553 U.S. 137, 146, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008) (noting that the purpose of the ACCA is to focus on the “special danger” created when violent criminals or drug traffickers possess a gun). It does this, in part, by creating mandatory sentences of at least fifteen years for those who violate the statute while committing or after having committed drug crimes or crimes of violence, indicating that Congress sought to remove the most dangerous individuals from society. See 18 U.S.C. §§ 924(e)(1). But by including the mere possession of any ammunition, no matter how or why acquired, and by giving no regard to the remoteness of the triggering felonies, Congress has imposed an extreme sentence for what may well be innocent conduct, conduct posing no more risk of harm than possessing an antique gun. See 18 U.S.C. § 921(a)(3) (excluding antique firearms from prohibited firearms); United States v. Yirkovsky, 259 F.3d 704, 705, 707 n. 4 (8th Cir.2001) (noting that the fifteen-year ACCA sentence was “extreme” as applied to a defendant convicted for possessing a single bullet that he found while removing carpet in payment for his rent). Congress has imposed the same fifteen-year sentence on a man who acquired shotgun shells while helping a widow as that imposed on a recent offender who possesses a semi-automatic handgun with a silencer — a weapon synonymous with criminality. See 18 U.S.C. §§ 921(a)(3)(C), 922(g)(1), 924(e)(1).
Two objective criteria — sentences imposed on others in the federal jurisdiction and sentences imposed for the same offense in other jurisdictions — as well as common sense, suggest that the ACCA dragnet is too broad. See Harmelin, 501 U.S. at 1005, 111 S.Ct. 2680. Speaking on behalf of the Judicial Conference, Judge Cassell provided a telling example of inequities generated by mandatory minimum sentences as compared to other sentences:
Mandatory minimum sentences produce sentences that can only be described as bizarre. For example, recently I had to sentence a first-time offender, Mr. Weldon Angelos, to more than 55 years in prison for carrying (but not using or displaying) a gun at several marijuana deals. The sentence that Angelos received far exceeded what he would have received for committing such heinous crimes as aircraft hijacking, second degree murder, espionage, kidnapping, aggravated assault, and rape. Indeed, the very same day I sentenced Weldon Angelos, I gave a second-degree murderer 22 years in prison — the maximum suggested by the Sentencing Guidelines. It [is] irrational that Mr. Angelos will be spending 30 years in prison longer for carrying a gun to several marijuana deals than a defendant who murdered an elderly woman by hitting her over the head with a log.
19 Fed. Sent. R. at 344.
Regarding the second eriterium, Young’s mandatory minimum sentence under the ACCA finds no comparability to sentences *632 imposed for the same offense in other jurisdictions. Amicus counsel provided statistics showing that states do not generally prohibit the possession of shotgun shells by felons or impose lengthy sentences for comparable offenses. I know of no state that would punish Young’s crime of possession with a fifteen-year sentence. Only seventeen states prohibit the possession of ammunition by any particular category of non-intoxicated persons, and some of these prohibit only handgun ammunition. Law Center to Prevent Gun Violence, Ammunition Regulation Policy Summary, Summary of State Law at 3 (last updated Dec. 1, 2013), http://smartgunlaws.org/ ammunition-regulation-policy-summary/. In Tennessee, the state of Young’s arrest, his conduct is not even a crime because the corresponding state offense of being a felon in possession of a firearm, which is punishable “based on the seriousness of the offense and the potential for harm to others,” does not extend to ammunition. Tenn.Code Ann. §§ 39-17-1307(b)(l)(A), ed. cmt., 39 — 11—106(a)(ll). Of the states in the Sixth Circuit, only Michigan bars the possession of ammunition by felons, but this restriction expires five years after the date a prisoner is released from custody, as long as certain conditions are met. Mich. Comp. Laws § 750.224f(3)-(4). And there, a person convicted of being a felon in possession of ammunition is subject to only a five-year maximum sentence. Mich. Comp. Laws § 750.224f(6). The remaining Sixth Circuit states bar possession of firearms — not ammunition — by felons, but each state either has a maximum sentence of five years or less or no statutorily mandated sentence for the crime. See Ky.Rev. Stat. Ann. §§ 527.010, 527.040, 532.060(2)(c); Ohio Rev.Code Ann. §§ 2923.11(B)(1), 2923.13(A)(2) & (B), 2929.13.
In a general sense, federal sentences often far exceed state sentences for comparable conduct, a fact that may itself suggest disproportionality or unfairness. See Michael A. Simons, Prosecutorial Discretion and Prosecution Guidelines: A Case Study in Controlling Federalization, 75 N.Y.U. L.Rev. 893, 916-17 (2000). Considering the facts of the crime charged— that it was: committed with little culpability or risk of harm as compared to other crimes governed by the ACCA; consisting of behavior that many states do not criminalize and none would penalize so harshly; punishable by the same mandatory harshness as crimes posing a real risk to society — the inference of unfairness is unavoidable. Such comparisons have been held to support Eighth Amendment violations. E.g., Kennedy v. Louisiana, 554 U.S. 407, 426, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008) (finding it significant in Eighth Amendment analysis of a death penalty case that the defendant would not have received similar punishment “in 45 jurisdictions”); Solem, 463 U.S. at 303, 103 S.Ct. 3001 (finding Eighth Amendment violation in part because the defendant had been treated more harshly than other criminals in the state who had committed more serious crimes and “more harshly than he would have been in any other jurisdiction”).
The practical problems with — and unfairness of — the ACCA and mandatory minimum sentences in general have long been a concern of legal scholars and many in the judiciary. E.g., Paul J. Hofer, Review of the U.S. Sentencing Commission’s Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System, 24 Fed. Sent. R. 193, 193 (2012) (“Mandatory minimum penalty statutes are particularly wasteful and unfair; they sweep too broadly and require excessively long sentences for over ten thousand offenders every year.”); Paul G. Cas-sell and Erik Luna, Sense and Sensibility *633 in Mandatory Minimum Sentencing, 23 Fed. Sent. R. 219, 219 (2011) (Mandatory mínimums “conflict with the separation of powers doctrine,” “implicate federalism concerns,” “distort the processes and outcomes of the federal system,” and “deprive judges of the flexibility to tailor punishment in individual cases ... resulting] in unduly harsh sentences.”); Judge James S. Gwin, Juror Sentiment on Just Punishment: Do the Federal Sentencing Guidelines Reflect Community Values?, 4 Harv. L. & Pol’y Rev. 173, 185-86 (2010) (“Congressional forays into the establishment of mandatory-minimum sentences ... have only further diminished the connection between community sentiment and criminal punishment.”); U.S. Congress, Families Against Mandatory Mínimums, http:// famm. org/pr oj ects/federal/us-congress/ (last visited Sept. 2, 2014) (highlighting efforts in Congress to repeal mandatory mínimums).[1] See also United States v. Young, 960 F.Supp.2d 881, 905-09 (N.D.Iowa 2013) (criticizing the role of the DOJ in determining which offenders to prosecute in a manner that would carry a statutory minimum).
While the means Congress has selected must be accepted, this case once again reveals the need for, at minimum, a more sensible and targeted ACCA, one that would continue to remove from society those most likely to cause harm while allowing less severe sentences for those who, like Young, do not pose that risk. The ACCA would benefit from practical measures such as a safety valve or graduated sentencing based on the kind of weapon or ammunition possessed, the indi-cia of risk, or the remoteness of past crimes. E.g., The Justice Safety Valve Act of 2013, S. 619, 113th Congress (2013) (proposing to allow federal judges to impose sentences below statutory mínimums to prevent injustice). Or Congress could simply give district court judges — who tend to have better knowledge of whether defendants truly pose a risk to society— the discretion to impose appropriate sentences. See Statement on Behalf of the Judicial Conference, 19 Fed. Sent. R. at 348-49 (highlighting various policy options for increasing judicial discretion in a fair and transparent manner); Judge Nancy Gertner, Supporting Advisory Guidelines, 3 Harv. L. & Pol’y Rev. 261, 262 (2009) (arguing that judicial discretion in sentencing “is not a spigot [that must] be turned on or off’ but something that can be used with proper guidelines for consistency and transparency); see also Judge Nancy Gertner, A Short History of American Sentencing: Too Little Law, Too Much Law, or Just Right, 100 J.Crim. L. & Criminology 691, 694-704 (2010) (tracing sentencing trends and showing how, ironically, the Guidelines and mandatory minimums were originally part of an effort to reduce sentencing disparity). Such discretion would have made all the difference in this case, as Judge Collier made quite clear that his factual findings showed Young not to be the kind of person who should be put away for fifteen years to protect society.
Society pays a great price when Congress over-criminalizes conduct. The cycle of poverty, criminality, and incarceration decimates communities, often “for no truly good law enforcement reason.” Attorney General Eric Holder, Remarks at the Annual Meeting of the American Bar Association’s House of Delegates (Aug. 12, 2013), available at http://www.justice.gov/iso/opa/ *634 ag/speeches/2013/ag-speech-130812html. Prisons operate substantially over capacity, and the Department of Justice is forced to cut funding from other priorities to pay for prison growth. Rhonda McMillion, Bipartisan push is on for sentencing reform, A.B.A. J. (posted Feb. 1, 2014), available at http://www.abajournal.com/magazine/ article/bipartisan_push_is_on_for_ sentencing_reform/. Perhaps one of the greatest harms is that indiscriminate criminalization erodes the faith of our citizens in the federal criminal justice system. That loss of faith in the system entrusted with societal justice reverberates through our communities, damaging our families, our schools, and our workplaces — components that are necessary to an effective social structure in our nation.
Congress is well aware of the problem of over-criminalization; indeed, it has taken sufficient notice for the House Judiciary Committee to form a special task force to address the drastically expanding repertoire of federal crimes, many of which, like the present offense, include no criminal intent element. Judiciary Committee, Press Release, House Judiciary Committee Reauthorizes Bipartisan Over-Criminalization Task Force (posted Feb. 5, 2014), http://judiciary.house.gov/indexcfm/ 2014/2/house-judiciary-committee-reauthorizes-bipartisan-over-criminaliz ation-task-force. The United States Sentencing Commission has set as a priority for its Sentencing Guidelines amendment cycle for May 1,
[cjontinuation of its work with Congress and other interested parties on statutory mandatory minimum penalties to implement the recommendations set forth in the Commission’s 2011 report to Congress, titled Mandatory Minimum Penalties in the Federal Criminal Justice System, including its recommendations regarding the severity and scope of mandatory minimum penalties, consideration of expanding the ‘safety valve’ at 18 U.S.C. § 3553(f), and elimination of the mandatory ‘stacking’ of penalties under 18 U.S.C. § 924(c), and to develop appropriate guideline amendments in response to any related legislation.
http://www.ussc.gov/sites/defaulVfiles/pdf/ amendment-process/federal-register-notices/20140814_FR_FinaUPriorities.pdf (last visited Sept. 2, 2014).
“[W]e judges have a right — a duty even — to express criticism of legislative judgments that require us to uphold results we think are wrong.” United States v. Ingram, 721 F.3d 35, 43 n. 9 (2d Cir. 2013) (Calabresi, J., concurring). I therefore join the continuous flood of voices expressing concern that the ACCA and other mandatory minimum laws are ineffective in achieving their purpose and damaging to our federal criminal justice system and our nation. I commend this case as another example of the need to reconsider the ACCA and mandatory sentencing in general.

. It appears that many states have begun enacting sentencing reforms to reduce or remove mandatory minimum sentences. See Recent State-Level Reforms to Mandatory Minimum Laws, Families Against Mandatory Mín-imums, available at http://famm.org/wp-content/uploads/2013/08/F S-List-of-State-Reforms-2.25.pdf (last visited Sept. 2, 2014).