

# SUPREME COURT OF MISSOURI
## en banc

STATE ex rel. MARK A. RICHARDSON,   )
  )
    Relator,   )
  )
vs.   )     No. SC94716
  )
THE HONORABLE DANIEL R. GREEN,   )
  )
    Respondent.   )

### ORIGINAL PROCEEDING IN PROHIBITION

*Opinion issued July 21, 2015*

The prosecutor in the underlying action seeks a writ of prohibition preventing the trial court from applying section 558.046[1] to reduce Larry Welch's sentences for vehicular manslaughter.[2] Section 558.046, as relevant here, permits a reduction of sentence only when the inmate has been convicted of an alcohol-related crime that does not involve violence or the threat of violence. The prosecutor contends that the trial court lacked authority to reduce Mr. Welch's involuntary manslaughter sentences under section 558.046 because a crime that causes death and injury through the operation of a motor vehicle while intoxicated is a crime that "involves violence." This Court issued a

---

[1] All statutory citations are to RSMo 2000 unless otherwise indicated.
[2] The trial court also set aside the two five-year assault sentences and ordered suspended imposition of sentences and five years' probation on each. The prosecutor does not contest this reduction in this action.

preliminary writ of prohibition, which it now makes permanent.

The phrase "crimes that involve violence" is broad in scope, encompassing more than merely crimes of violence – instead, conviction of any crime that involves violence precludes a sentence reduction. This Court presumes that the legislature had a reason for using the broad term "involves violence" rather than merely listing crimes requiring intentional or knowing violent conduct. Here, an element of the crime of which Mr. Welch was convicted required that his conduct cause the death of another. Violent conduct is, therefore, a necessary component of his crime. Nothing in section 558.046 suggests that the legislature intended to allow sentence reductions for a crime that necessarily results in death through the criminal negligence of the defendant while driving while intoxicated. This Court, accordingly, rejects Mr. Welch's argument that the scope of section 558.046 should be limited to violence that was intentionally or knowingly inflicted by the defendant. The trial court had no authority to reduce Mr. Welch's involuntary manslaughter sentences pursuant to section 558.046.

## I.      STATEMENT OF FACTS AND PROCEDURAL HISTORY

Mr. Welch pleaded guilty to two counts of first-degree involuntary manslaughter under section 565.024, RSMo Supp. 2006, and two counts of second-degree assault under section 565.060, RSMo Supp. 2006, for events occurring on November 4, 2007. Mr. Welch admitted that, on that date, he was driving while his blood alcohol content was in excess of what the law presumes to be impaired. While so impaired, Mr. Welch was driving east in a westbound lane. A vehicle driven by Eric Olsen and occupied by his wife, Jean Olsen, and their two children, Tobias and Johanna, was driving west in the

westbound lane of the same road. Eric swerved into the eastbound lane to avoid Mr. Welch's vehicle, but at the same time, Mr. Welch also swerved into the eastbound lane and hit the passenger side of the Olsen vehicle. Jean and Tobias died. Eric and Johanna suffered permanent injuries.

Mr. Welch entered an open plea of guilty. The trial court sentenced him to two concurrent 15-year terms of imprisonment on the involuntary manslaughter counts and two concurrent five-year terms of imprisonment on the assault counts, to be served consecutively to the involuntary manslaughter sentences. Mr. Welch moved for post-conviction relief under Rule 24.035, which was overruled. *Welch v. State, 326 S.W.3d 916 (Mo. App. 2010).* Mr. Welch subsequently moved for a reduction of his sentences under section 558.046. Rejecting the prosecutor's argument that the conditions were not met for a reduction in sentence under section 558.046, the circuit court ordered Mr. Welch's involuntary manslaughter sentences to be reduced to two concurrent seven-year sentences. The prosecutor filed a petition for writ of prohibition in the court of appeals. That court denied the petition but stayed the trial court's sentence-reduction order. During that period of stay, the prosecutor filed a petition for writ of prohibition in this Court. On January 12, 2015, this Court issued a preliminary writ of prohibition, pursuant to its authority under article V, section 4 of the Missouri Constitution.

## II.   *STANDARD FOR ISSUANCE OF WRIT OF PROHIBITION*

This Court has the authority to "issue and determine original remedial writs," *Mo. Const. art. V, § 4.1*, including writs of prohibition:

> The extraordinary remedy of a writ of prohibition is available: (1) to prevent the usurpation of judicial power when the trial court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted.

*State ex rel. O'Basuyi v. Vincent, 434 S.W.3d 517, 519 (Mo. banc. 2014).*

## III. INVOLUNTARY MANSLAUGHTER WHILE OPERATING A MOTOR VEHICLE WHILE INTOXICATED "INVOLVES VIOLENCE"

Mr. Welch pleaded guilty to two counts of violating section 565.024.1(3)(a), which states in relevant part:

> 1. A person commits the crime of involuntary manslaughter in the first degree if he or she:
> ….
> (3) While in an intoxicated condition operates a motor vehicle in this state, and, when so operating, acts with criminal negligence to: …
> (a) Cause the death of any person not a passenger in the vehicle operated by the defendant ….

Section 565.002(4) defines "intoxicated condition" as being "under the influence of alcohol, a controlled substance, or drug, or any combination thereof." Section 562.016.5 states that a person "acts with criminal negligence" when he or she "fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

The trial court held that it had authority under section 558.046 to reduce Mr. Welch's involuntary manslaughter sentences. As relevant here, section 558.046 provides that:

> The sentencing court may, upon petition, reduce any term of sentence or probation pronounced by the court or a term of conditional release or parole

4

pronounced by the state board of probation and parole if the court determines that:

> (1) The convicted person was:
>> (a) Convicted of an offense that *did not involve violence* or the threat of violence; and
>> (b) Convicted of an offense that involved alcohol or illegal drugs; …

(Emphasis added.) As relevant here, section 558.046(1)(a), thereby, requires that the person's offense did not "involve violence." The following subsection requires proof that the offender has successfully completed a detoxification and rehabilitation program.[3] In other words, the statute provides a mechanism to reduce an already imposed sentence for offenders whose crime did not involve violence if their completion of relevant programs indicates that the enhanced risk of driving while intoxicated has been successfully ameliorated.

The prosecutor argues that Mr. Welch's first-degree involuntary manslaughter convictions under section 565.024 involve violence and that the trial court acted beyond its authority in reducing Mr. Welch's sentences. Mr. Welch argues that the phrase "involve violence" should be interpreted to apply only to offenses that have as an element the requirement that the defendant intend the use of violence.

---

[3] The remainder of section 558.046 sets out additional conditions for reduction not at issue on this appeal, stating:

> (2) Since the commission of such offense, the convicted person has successfully completed a detoxification and rehabilitation program; and
> (3) The convicted person is not:
>> (a) A prior offender, a persistent offender, a dangerous offender or a persistent misdemeanor offender as defined by section 558.016; or
>> (b) A persistent sexual offender as defined in section 558.018; or
>> (c) A prior offender, a persistent offender or a class X offender as defined in section 558.019.

5

In determining the application of section 558.046(1)(a), this Court first turns to the statutory language. "The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *State ex rel. Burns v. Whittington, 219 S.W.3d 224, 225 (Mo. banc 2007).* This Court must presume "[e]very word, sentence or clause in a statute" has effect. *Wehrenberg, Inc. v. Dir. of Revenue, 352 S.W.3d 366, 367 (Mo. banc 2011).* "Absent a statutory definition, words used in statutes are given their plain and ordinary meaning with help, as needed, from the dictionary." *Balloons Over the Rainbow, Inc. v. Dir. of Revenue, 427 S.W.3d 815, 825 (Mo. banc 2014), quoting, Am. Healthcare Mgmt., Inc. v. Dir. of Revenue, 984 S.W.2d 496, 498 (Mo. banc 1999).*

Section 558.046 does not define what is meant by a crime that does not "involve violence." This Court, therefore, looks to the dictionary definitions. Webster's Third New International Dictionary defines "violence" as "exertion of any physical force so as to injure or abuse," and "intense, turbulent, or furious action, force, or feeling often destructive." *Webster's Third New International Dictionary of the English Language 2554 (3d ed. 1993).* The American Heritage Dictionary defines "violence" as "[p]hysical force exerted for the purpose of violating, damaging, or abusing," "[a]busive or unjust exercise of power," and "[c]aused by unexpected force or injury rather than by natural causes." *The American Heritage Dictionary 1921 (4th ed. 2000).*

As is evident, the term "violence" encompasses both acts that involve or imply intentional or knowing conduct and acts that do not require any particular mens rea. To understand whether the legislature intended section 558.046(1)(a) to exclude all crimes

6

based on violent conduct, or only those crimes requiring a mens rea of knowing, intentional, or purposeful conduct, this Court looks to the context in which the term "violence" is used in the statute.

Other statutes that use the word "violence" also use terms that indicate an intentional or purposeful use of violence is required. For example, section 455.010(5), RSMo Supp. 2013, defines "domestic violence" as "abuse or stalking committed by a family or household member …." Abuse and stalking are intentional acts. Similarly, section 632.480(4), RSMo Supp. 2014, defines "sexually violent offense" by listing specific crimes, including "the felonies of rape in the first degree … sodomy in the first degree … statutory sodomy in the first degree …" and by including a catch-all that states: "or any felony offense that contains elements substantially similar to the offenses listed above." These crimes can be committed only through an intentional or at least a knowing or purposeful act.

By contrast, in section 558.046(1)(a), the legislature did not similarly list specific crimes requiring intent, nor did it refer to violent conduct that is inherently intentional. Instead, it broadened the scope of the word "violence" by pairing it with the word "involve," stating that the crime did not "involve violence." Webster's Third New International Dictionary defines "involve" as "to complicate or make intricate in thought or form," "to require as a necessary accompaniment," "to have an effect on," and "to engross or occupy fully." *Webster's Third New International Dictionary of the English Language 1191 (3d ed. 1993).* The American Heritage Dictionary defines "involve" as "[t]o contain as a part; include," "[t]o have as a necessary feature or consequence; entail,"

7

"[t]o influence or affect," and "[t]o make complex or intricate; complicate." *The American Heritage Dictionary 921 (4th ed. 2000).*

"Involve violence" does not contain the implication of intent/purpose/knowledge as a necessary element for "violence" and does not inherently imply or address the mens rea by which the act is done. It simply requires that the offense of which the individual was convicted *involve* violence, not that the individual *intended* violence.

Mr. Welch's convictions for involuntary manslaughter under section 565.024.1(3)(a) inherently involved violence. That statute states:

> A person commits the crime of involuntary manslaughter in the first degree if he or she: … While in an intoxicated condition operates a motor vehicle in this state, and, when so operating, acts with criminal negligence to: … Cause the death of any person not a passenger in the vehicle operated by the defendant ….

*Id.* Because of its size, weight, and capability for movement and velocity, a vehicle can apply a significant amount of physical force. The risk of that physical force being applied to an individual increases substantially when the driver is in an intoxicated condition. Drunk driving is an extremely dangerous crime, causing tens of thousands of injuries and deaths and uncounted harm to property each year.[4] A conviction under section 565.024.1(3)(a) inherently requires that physical force be applied to a person because the killing of an individual is an element of the offense. The elements of section 565.024.1(3)(a) inherently involve violence regardless of whether violence was intended

---

[4] *National Highway Traffic Safety Administration, Traffic Safety Facts 2013 (DOT HS 812 102, Dec. 2014), http://www-nrd.nhtsa.dot.gov/Pubs/812102.pdf* (last accessed July 16, 2015) (a copy has been placed in the court file).

8

by the driver.[5]

Mr. Welch argues that this Court, nonetheless, should interpret section 558.046(1)(a) to require intentional or purposeful violent or aggressive conduct, and so not to apply to involuntary manslaughter involving criminal negligence, because federal courts have so interpreted what he claims is similar language in federal statutes.

None of the federal cases on which Mr. Welch relies are on point. All involve interpretation of certain language in a section of 18 U.S.C. § 924 (2006), also known as the Armed Criminal Career Act, or ACCA. The ACCA is not a sentence-reduction statute. Rather, it imposes a 15-year mandatory minimum sentence on an offender who unlawfully possesses a firearm and who is considered an "armed career criminal" because the offender has three prior convictions "for a violent felony or a serious drug offense." *§ 924(e)(1)*. The purpose of the statute is to identify those repeat offenders who present a danger to others and to impose mandatory minimum sentences on them.

By contrast, section 558.046 is not a method of increasing the sentence a defendant must serve if his or her conduct involves violence. The persons to whom the statute applies already have been convicted and sentenced based upon other Missouri

---

[5] The United States Supreme Court looks at what would be a typical case of a crime such as driving under the influence rather than to the particular facts of a specific driving under the influence case to determine whether a crime is a "crime of violence" or a "violent crime" when interpreting federal law. *Johnson v United States, -- U.S. --, -- S.Ct. --, No. 13-7120, slip op. at 4, 13 (June 26, 2015)*; *Begay, 553 U.S. at 141*; *Sykes v. United States, 131 S. Ct. 2267, 2272 (2011)*. It is unnecessary here to determine whether, in using the term "involve violence," the Missouri legislature intended to broaden the scope of section 558.046(1)(a) to allow consideration of whether the specific facts of the individual case involved violence, even if the elements of the crime would not always do

statutes. Missouri's legislature chose in section 558.046 to provide a mechanism by which those offenders who have completed alcohol rehabilitation programs can have their sentence, probation, or parole reduced for what amounts to "good behavior." The legislature chose not to make this mechanism available to those whose crimes involved violence, however.

The cases Mr. Welch relies on are further distinguishable in that they all involve the meaning of what has become known as "the residual clause" in § 924(e)(2)(B). That section defines "violent felony" to include not only a felony that involves the use, attempted use or threatened use of physical force against another, but also a crime that "(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical harm to another." *Id.* The meaning of subsection (ii) has been elusive to the federal courts because it appears to require that a felony involve "a serious potential risk of physical harm to another," yet the subsection specifically lists burglary and extortion, which do not on their face appear necessarily to involve a serious potential risk of physical injury to another.

The United States Supreme Court has attempted to determine the meaning of this residual clause in three cases. In the first case, *Begay v. United States, 553 U.S. 137 (2008)*, it concluded that, because the listed crimes (burglary, extortion, arson) all involve intentional conduct, the statute must apply only to intentional crimes, under the principle of *noscitur a sociis* – a word is known by the company it keeps. *Begay*, therefore,

---

so, for here the elements and the facts both involve causing the death of another through use of a dangerous instrument, a motor vehicle.

10

refused to apply it to crimes such as driving under the influence, which required only negligent or reckless conduct. *Begay, 553 U.S. at 139, 141-44.*[6] In *Sykes v. United States, 131 S.Ct. 2267, 2273-74 (2011)*, the Supreme Court narrowed *Begay* in holding that, although the crime of felony vehicle flight of which the defendant was convicted was not one of the listed offenses in § 924(e)(2)(B)(ii), it did have "as an element the use, attempted use, or threatened use of physical force against the person" as stated in 18 U.S.C. § 924(e)(2)(B)(i) and so was encompassed by the statute's residual clause because such conduct – felony vehicle flight from the police – inherently involved a serious risk of injury.

Most recently, since argument of this case, the United States Supreme Court decided *Johnson v United States, -- U.S. --, -- S.Ct. --, No. 13-7120 (June 26, 2015).* *Johnson* held that the residual clause in § 924(e)(2)(B)(ii) was too vague to provide adequate notice as to what conduct was punishable by the mandatory minimum set out in the statute. *Id., slip op. at 4-5.* In particular, it noted, the courts had taken a "categorical approach" to determining whether a crime involves conduct that presents a serious potential risk of physical injury to another. *Id., slip op. at 4, 13.* That meant that, if in "the ordinary case" a crime of the sort of which defendant was accused would involve

---

[6] Although *Begay* involved only DUI, not manslaughter, *United States v. Herrick, 545 F.3d. 53, 59 (1st Cir. 2008)*, applied *Begay*'s reasoning to a vehicular homicide conviction under Wisconsin law because, as noted, the crimes listed in the statute all require intent, which vehicular homicide did not. *Herrick*'s analysis was directed solely to the intent expressed by Congress, as interpreted by *Begay*, in the federal statute, and did not address the issue of whether the term "violence" could, in other circumstances, include manslaughter.

such conduct, then the crime was a violent crime, even if the defendant's actual crime or the crime's statutory elements did not require or involve a serious risk of violence. *Id.* It found that the residual clause did not give sufficient notice to the defendant of what conduct was made criminal or subject to a greater sentence. *Id., slip op. at 10-13.* *Johnson* specifically clarified, however, that its holding did not call into question the constitutional validity of other statutes using the term "substantial risk" because those statutes generally gauge risk by looking at the individual offender's actual conduct, not the riskiness of "an idealized ordinary case of the crime." *Id., slip op. at 12.*

The crime of which Mr. Welch was convicted is not subject to the vagueness objections that concerned the United States Supreme Court in *Johnson.* Section 565.024.1(3) requires as an element that death result from the defendant's driving in an intoxicated condition, and section 558.046 excepts a defendant from sentence reduction only if that defendant's crime – not some "idealized ordinary case of the crime," as contemplated by *Johnson* – involved violence. The vagueness concerns that troubled the *Johnson* court are not present here. Neither does section 558.046(1)(a) list examples of crimes that require purposeful violent action as does the federal statute on which Mr. Welch relies. To the contrary, section 558.046(1)(a) uses the broader phrase: a crime that "did not involve violence." Accordingly, Mr. Welch's reliance on federal cases interpreting the ACCA is not persuasive.[7]

---

[7] As Mr. Welch's crime "involved violence," this Court has no occasion to determine whether the reasoning in *Johnson* would have any application to an offender who was convicted of a crime that instead involved "the threat of violence," as also set out as an exception in section 558.046(1)(a). That determination would require a review of

*IV.*    *CONCLUSION*

Because Mr. Welch's offenses involved violence, the trial court had no authority to reduce Mr. Welch's sentences under section 558.046.   The preliminary writ of prohibition is made permanent.

_____

**LAURA DENVIR STITH, JUDGE**

All concur.

---

whether the particular case involved a threat of violence rather than whether such a threat was presented only in the "ordinary case."  Further, it would require a determination of whether *Johnson*'s analysis of what constitutes adequate notice of what conduct is criminal has any application to a statute that provides a basis for sentence reduction or parole or probation relief.  Those issues are not now before this Court.

13